**In re: SEALED CASE.**

No. 00–3057.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 2001.

Decided April 24, 2001.

Gregory L. Poe, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was A.J. Kramer, Federal Public Defender.

Marc O. Litt, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Roy W. McLeese, III, and Mary T. O'Connor, Assistant U.S. Attorneys.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Appellant pleaded guilty to one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of unlawful possession of cocaine in violation of 33 D.C.Code § 33–541. The presentence investigation report found that appellant had threatened to shoot someone with the firearm, a separate felony that

under § 2K2.1(b)(5) of the United States Sentencing Guidelines calls for a 4–level enhancement of the sentence for gun possession. Appellant objected, and the district court took evidence, including some hearsay testimony. On finding by a preponderance of the evidence that appellant had indeed made such a threat, the district court applied the enhancement and sentenced appellant accordingly.

Appellant challenges the court's reliance on the hearsay. He also objects to the use of the preponderance standard, contending that the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires the government to prove the gun threat beyond a reasonable doubt. (He makes no claim of entitlement to jury trial on the gun threat.) Neither of appellant's claims prevails. We address the *Apprendi* theory first.

\* \* \*

Apprendi had pleaded guilty to a gun possession charge carrying a sentence of 5–to–10 years. At sentencing, the trial court found by a preponderance that he had committed the crime with a racially biased purpose, a finding that under New Jersey law allowed a 10–to–20 year sentence for the underlying crime. The court imposed a 12–year sentence. In vacating the sentence, the Supreme Court held that any fact (other than a prior conviction) "that increases the penalty for a crime *beyond* the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 120 S.Ct. at 2362–63 (emphasis added).

In the present case, appellant's sentence, with the enhancement, was 48 months, far less than the 10–year statutory maximum for the gun possession charge. 18 U.S.C. § 924(a)(2). Thus appellant can win on his *Apprendi* claim only if *Apprendi* also applies to a Guidelines enhancement that results in a sentence *within* the statutory range. Because appellant failed to raise this issue at sentencing, we review for plain error, *United States v. Foster,* 988 F.2d 206, 209 (D.C.Cir.1993); in fact there is no error at all.

Clearly *Apprendi* does not articulate a rule that takes the step proposed by appellant. In addition, the *Apprendi* Court specifically distinguished, and found permissible, the practice of authorizing "judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." 120 S.Ct. at 2358 (citing *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). See also *id.* at 2366 n. 21 (stating that the Court took no position on the effect of the decision on the Guidelines, but quoting the observation in *Edwards v. United States,* 523 U.S. 511, 515, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), that "petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit."). The opinion stressed that the Court had "often noted" that judges had exercised this discretion "*within statutory limits.*" *Id.* at 2358. In fact, the Court recently approved enhancements based on acquitted conduct when supported by a preponderance of the evidence. See *United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Given this traditional latitude, and the *Apprendi* Court's explicit endorsement of the tradition, it is hard to see how the Court could have intended to mandate the heightened standard for application of the Guidelines' enhancement instructions when the resulting sentence remains within the statutory maximum. Reading the *Apprendi* rule to avoid such a result is consistent with the Court's statement that the case addressed

a "narrow issue." *Apprendi*, 120 S.Ct. at 2354.

■ Appellant seeks support in the fact that the Court has granted certiorari, vacated, and remanded ("GVR'd") a Guidelines case for further consideration in light of *Apprendi*. See *Clinton v. United States*, — U.S. —, 121 S.Ct. 296, 148 L.Ed.2d 235 (2000), remanding *United States v. Reliford*, 210 F.3d 285 (5th Cir. 2000). At best a GVR order could add little to appellant's case. While it may indicate "a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration," *Lawrence v. Chater*, 516 U.S. 163, 167, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996), it does "not amount to a final determination on the merits," *Henry v. City of Rock Hill*, 376 U.S. 776, 777, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964). But appellant's attempted inference is even weaker here. The GVR'd case involved not only Guidelines enhancements but also the application of a *statutory* progression of minimum and maximum sentences under 21 U.S.C. § 841 (providing for increasing penalties for different quantities and types of drugs). Facts that trigger the higher statutory maxima provided in § 841 are clearly subject to *Apprendi*, as we found in *United States v. Fields*, 242 F.3d 393 (D.C.Cir.2001). The Solicitor General supported a grant of certiorari in *Clinton* only for the statutory penalty issues, but the Court issued the GVR order without making the distinction. App. Br. at 22–23. As weak as inferences from a GVR may be, an inference from the Court's failure to sever some issues from the remand is feebler yet. We give it no weight.

The *Apprendi* dissenters, to be sure, attacked the line drawn by the majority as "meaningless formalism," 120 S.Ct. at 2388–90, and appellant argues in essence that their reading reveals that the logic of *Apprendi* will ultimately compel the Court to apply the case to Guidelines enhancements. App. Br. at 21–22. The *Apprendi* dissent suggested that the majority's stated rule would allow a legislature to set astronomic statutory ceilings for crimes, and then direct the courts to make adjustments in accordance with facts determined solely by the judge. 120 S.Ct. at 2389. But the majority responded that "structural democratic constraints exist to discourage legislatures from enacting penal statutes that expose *every* defendant ... to a maximum sentence exceeding that which is, in the legislature's judgment, generally proportional to the crime." *Id.* at 2363 n. 16. It is clearly not for us to disregard a conceptual line that the Court majority has not only stated but also stoutly defended against a dissenting challenge.

We therefore join all of our sister circuits that have addressed the issue in declining to extend *Apprendi* beyond its stated coverage. See *United States v. Caba*, 241 F.3d 98, 101 (1st Cir.2001); *United States v. Garcia*, 240 F.3d 180, 184 (2d Cir.2001); *United States v. Williams*, 235 F.3d 858, 862–63 (3d Cir.2000); *United States v. Kinter*, 235 F.3d 192, 198–201 (4th Cir.2000); *United States v. Keith*, 230 F.3d 784, 786–87 (5th Cir.2000); *United States v. Munoz*, 233 F.3d 410, 413–14 (6th Cir.2000); *Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir.2000); *United States v. Aguayo–Delgado*, 220 F.3d 926, 933–34 (8th Cir.2000); *United States v.Hernandez–Guardado*, 228 F.3d 1017, 1027 (9th Cir.2000); *United States v. Heckard*, 238 F.3d 1222, 1235–36 (10th Cir. 2001); *United States v. Nealy*, 232 F.3d 825, 829 (11th Cir.2000).

\* \* \*

■ The Sentencing Guidelines provide that a sentencing judge may use relevant information to resolve a dispute over a

factor without regard to admissibility at trial, "provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 (2000). The evidence supporting the finding of a gun threat was clearly hearsay that would not have been admissible at trial. Officer Spalding of the Metropolitan Police Department gave testimony that included reports of statements made to him by the complainant and a friend of hers, and (double hearsay) statements made by the complainant to another police officer (Sergeant White) and relayed to Spalding. Appellant asserts that the crediting of hearsay testimony delivered by Officer Spalding violates both § 6A1.3 and appellant's due process rights under *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), which holds that a sentence founded on "misinformation of constitutional magnitude" may not be sustained. We have recently held that use of hearsay at sentencing does not per se violate a defendant's rights. See *United States v. Drew*, 200 F.3d 871, 879 (D.C.Cir.2000). As we cannot imagine how hearsay with "sufficient indicia of reliability to support its probable accuracy" could violate *Tucker*'s due process standard, our analyses of the due process and Guidelines arguments merge for the purposes of this appeal.

■ Appellant argues that we should review the reliability determination de novo. In support he cites *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), prescribing such review for district court findings of reasonable suspicion or probable cause, and the plurality opinion in *Lilly v. Virginia*, 527 U.S. 116, 136, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), requiring de novo review to resolve whether hearsay received in a criminal trial had the "particularized guarantees of trustworthiness" that are required under the Confrontation Clause for hearsay not meeting any recognized exception, see *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The government argues for an abuse of discretion standard, on the ground that the issue is basically an evidentiary ruling in a phase of the proceeding where the judge exercises broad discretion. We need not decide this dispute, because even under de novo review we find that the hearsay testimony has sufficient indicia of reliability.

Spalding testified that he responded to a radio run for a man with a gun at an apartment in Southeast Washington. Spalding went to the apartment and found appellant and his sister. Appellant "appeared distraught." Spalding asked if "there was a weapon in this apartment that needs to be removed," and appellant directed him to the back bedroom where another officer, White, found a 12-gauge shotgun. See Transcript of Sentencing, May 9, 2000 ("Tr.") at 14–16. After the gun was secured, Spalding interviewed those present in the ·apartment while White interviewed people on the street, including the complainant. See *id.* at 16–17. Spalding conducted follow-up interviews with the complainant and, at her suggestion, a friend of hers who was also present during the incident but who was not interviewed at the time. See *id.* at 20. The friend's story was consistent with the complainant's in all relevant respects. At the sentencing hearing Spalding offered the statements made to him and to White.

It appears agreed that appellant was acquainted with the complainant and that she took offense when he made a lewd comment about her from the apartment window as she passed by on the street. It is further agreed that appellant went down to the front of the building to intercept her, and an argument ensued. Here the agreement ends. According to the complainant's version as reported by Spalding, she made some (possibly threatening) ref-

erence to her boyfriend, and appellant responded that "he would take care of her, or he would take care of them." *Id.* at 18. Appellant retreated into the building, while complainant remained at the locked front door to the building. See *id.* Appellant then returned carrying something in his right hand. See *id.* When complainant recognized the item as a gun, she began to flee but then changed her mind. See *id.* at 19. As she returned toward the building, her friend stepped between her and the door. See *id.* at 19–20. Appellant reportedly told complainant's friend "to move out of the way, because he did not want to shoot her." *Id.* at 20, 21–22. Complainant understood herself to be the intended target. See *id.* at 20.

To establish reliability the government notes that complainant presented her version of the facts on the night of the incident, maintained it consistently in more than one later interview, and testified to it before the grand jury under oath. (The grand jury testimony was not admitted into evidence but government counsel proffered that she had read it and that it was consistent with the accounts by Spalding except as to the exact words of the appellant's threat. Gov't Br. at 20–21 n.15.) See *United States v. Williams*, 10 F.3d 910, 914–15 (1st Cir.1993) (crediting hearsay declarant who had previously presented story under oath and therefore subjected to perjury); *United States v. Corbin*, 998 F.2d 1377, 1386 (7th Cir.1993) (crediting hearsay based in part on fact that declarant gave statement to police at the scene "without opportunity for reflection" and maintained a consistent version).

Appellant tries to turn the complainant's self-consistency around, saying that she had an "obvious incentive to hold fast" once she had told her story. See App. Br. at 25. Perhaps so, but self-consistency, in accounts given virtually in the heat of the event and later with a clear exposure to perjury, must still count as a plus. Appellant further argues that complainant's self-corroboration is insufficient because her grand jury testimony differed from the earlier interviews. But all we know is that there was a minor difference in her report of the wording of the threat. This alone is not enough to undermine credibility. Finally, appellant notes that complainant failed in the first instance to reveal a past sexual relationship between them that might have created bias. But the testimony of co-conspirators and informers is often credited if other indicia of reliability are present, despite the fact that they may be perceived as interested parties. See *United States v. Golden*, 17 F.3d 735, 736 (5th Cir.1994) ("This court has previously concluded that information provided by an 'interested adverse witness' was sufficiently reliable."); *United States v. Wise*, 976 F.2d 393, 403 (8th Cir.1992) ("[A] coconspirator's prior inconsistent statement, brought out during his testimony at the sentencing hearing, was sufficiently reliable, when considered along with the other corroborating circumstances present.") (citing *United States v. Sciarrino*, 884 F.2d 95, 97 (3rd Cir.1989)).

The government points to other indicia of reliability besides self-consistency. First, appellant's own sister, testifying on his behalf, gave testimony consistent with the complainant's account at least up to the point of appellant's retreat into the building. She also acknowledged, on listening to a tape of a 911 call placed from the apartment, that appellant can be heard screaming, "[W]here is the gun?", that he was "pretty angry at this point," and that another woman at the scene was repeatedly yelling at appellant "to get into the house." Tr. at 75–78. That appellant was actively in search of the gun during the confrontation supports the likelihood of his using it to make a threat, and the would-be pacifier's shouts suggest that she at least

saw a risk of violence. Finally, the account of complainant's friend matched hers in all serious respects. Although there is no non-hearsay witness precisely confirming the threat, appellant has not pointed us to any case that would demand it. And it would make little sense for this court to make such a demand, especially in the context of judicial sentencing, as then the hearsay would be largely unnecessary to the court's finding.

Appellant takes several shots at the corroborating data, but most of his critiques show no more than that each item taken alone falls short of independently establishing the threats. Beyond that, he observes that the district court gave no weight to the claim by another sister of appellant, who was not present during the incident, that complainant had been drinking and smoking marijuana laced with PCP earlier in the day. See *id.* at 53–54. But the district court noted the testimony, expressed grave doubt as to its credibility, and said that even if true it was of little relevance, as there was no doubt of her ability to identify appellant correctly. See *id.* at 95–96.

Appellant also argues that the district court erred in discrediting the sister who was present. The court observed that it "was perfectly clear that her desire to protect her brother outweighed her desire, if any, to tell the truth." *Id.* at 95. The decision to disbelieve this direct witness, though affecting the court's ultimate assessment of the hearsay, was a garden-variety credibility issue that we could reverse only for clear error. We find none. The sister's testimony was jumbled and inconsistent and included retractions. Further, Spalding testified that neither sister had been forthcoming on the night of the incident and that both seemed committed to consulting with each other before talking with the police. We therefore find that the hearsay has substantial indicia of reliability and that appellant has failed to undermine our confidence in this assessment.

█ Finally, appellant claims for the first time on appeal that § 6A1.3(b) of the Guidelines and Fed.R.Crim.P. 32(c)(1) (which § 6A1.3(b) makes applicable to resolution of disputed sentencing factors) required specific written findings relating to the reliability and credibility of the hearsay declarants. But we have long and consistently held that one who fails to object to the absence of Rule 32(c)(1) findings waives his right to challenge an enhancement on these grounds and that we will uphold an enhancement supported by the record. See, e.g., *United States v. Sobin*, 56 F.3d 1423, 1428 (D.C.Cir.1995). In any event, because here we have reviewed the issue de novo, any error would appear harmless.

The judgment of conviction and sentence are

*Affirmed.*