**UNITED STATES of America,**
**Appellee,**

v.

**Dennis L. WEBB, Appellant.**

**No. 99–3114.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 9, 2001.

Decided July 27, 2001.

Peter S. Spivack, appointed by the court, argued the cause for appellant. With him on the briefs was Christopher T. Handman.

Mary B. McCord, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, John R. Fisher and Roy W. McLeese, III, Assistant U.S. Attorneys.

Before: GINSBURG, Chief Judge, and SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

This case presents questions arising from the Supreme Court's opinion in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), including the impact of *Apprendi* on the interpretation of the career offender provision

of the United States Sentencing Guidelines, U.S.S.G. § 4B1.1. Dennis Webb appeals from his conviction on three counts of distributing and one count of possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841. Webb contends that because a judge, rather than a jury, determined facts concerning drug quantity and prior criminal convictions, his sentence was imposed in violation of both the Constitution and the Sentencing Guidelines. For the reasons discussed below, we reject those challenges. We also reject Webb's subsidiary claims that the trial court erred in failing to credit him with accepting responsibility for his offenses, in admitting evidence of Webb's prior drug transactions, and in denying his motion to suppress evidence obtained during a search of his apartment.

I

In the spring of 1998, the government began investigating Webb for his suspected involvement in dealing cocaine base ("crack" cocaine) in Washington, D.C., and for his ties to a New York drug supplier. The government recruited Danon Johnson, a convicted drug dealer with whom Webb previously had done business, to arrange several controlled purchases from Webb. Webb sold Johnson cocaine base on May 14, 18, and 28, 1998. Each of these transactions was preceded by negotiations that were recorded on audiotape. The first two transactions took place in Johnson's apartment; the third transpired in a government car and was recorded on video and audiotape. Government laboratory reports showed that the quantity of cocaine base purchased on these occasions was 22.5, 34.7, and 53.5 grams, respectively. Following the sales, on July 28, 1998, a federal grand jury handed down a sealed indictment charging Webb with three counts of distributing cocaine base.

The government's investigation into Webb resumed on September 3, 1998, when investigators asked Johnson to attempt another purchase from Webb. Johnson contacted Webb, but Webb told Johnson that he did not have any crack for sale. Soon thereafter, the government obtained a search warrant for Webb's apartment, seeking documents related to Webb's drug business. The search warrant was executed on September 15, 1998, and investigators found 6.52 grams of crack, $15,114 in cash, drug packaging supplies, and a piece of paper with the name and pager number of the New York supplier sought by the government.

On December 3, 1998, a four-count superseding indictment was filed against Webb. The indictment charged him with one count of distribution for each of the three May drug purchases: Counts One and Two each charged Webb with distributing 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and Count Three charged him with distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). A fourth count, relating to the drugs seized from his apartment, charged Webb with possessing with intent to distribute a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Webb's case went to trial on April 27, 1999. Webb filed pretrial motions to bar the government from introducing evidence of his past drug transactions with Johnson, and to suppress evidence collected from the search of his apartment. The district court denied both motions. At trial, the government's evidence included the testimony of Johnson, as well as that of investigators who surveilled the transactions between the two men and who participated in the search. A government chemist testified and introduced lab reports that specified the weight of the cocaine base recovered from each transaction and the search.

Webb neither testified nor presented witnesses in his defense.

Consistent with then-prevailing precedent in this circuit, the trial court did not instruct the jury that it must find the drug quantities recited in the indictment; instead, it instructed that "the government need not prove that the defendant distributed any particular numerical amount of cocaine, but it must prove beyond a reasonable doubt that the defendant distributed a detectable or measurable amount of cocaine." 4/29/99 Tr. at 48. Similarly, the jury verdict form did not specify quantities for any of the charges. *See* App. 202. On May 4, 1999, the jury convicted Webb on all counts.

Based upon the presentence report ("PSR"), the district court found that Webb had two prior felony drug convictions, that he was on parole for one at the time of the offenses charged in the indictment, that the quantities of cocaine base involved in the indictment's four counts were as specified above, and that the total quantity was 116.82 grams.[1] This would ordinarily have given Webb a criminal history category of IV and an offense level of 32, which would have fixed his sentencing range at 168 to 210 months. *See* U.S.S.G. § 2D1.1(c)(4); *id.* § 4A1.1(a), (d); *id.* ch. 5, Pt. A. However, because of his two prior narcotics convictions, Webb qualified as a career offender. *See* U.S.S.G. § 4B1.1.[2] Under the career offender guideline, Webb received a criminal history category of VI and an offense level of 37. PSR ¶ 18.

These figures exposed Webb to a sentencing range of 30 years to life. *See* U.S.S.G. ch. 5, pt. A. On August 13, 1999, the court sentenced Webb to 30 years' imprisonment and 10 years of supervised release.

## II

Webb's principal challenge to his sentence is that it is contrary to the rule announced in *Apprendi,* that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Specifically, Webb first contends that, because the jury merely found him responsible for a detectable amount of cocaine base and made no findings concerning his prior convictions, his 30–year sentence exceeds the 20–year maximum constitutionally authorized by the jury's findings. *See* 21 U.S.C. § 841(b)(1)(C). Second, Webb contends that even if his sentence of 30 years did not exceed the lawful maximum, the district court committed error by sentencing him, under the career offender provision of the Sentencing Guidelines, U.S.S.G. § 4B1.1, to a sentence greater than that justified by the jury's determination alone. We consider these contentions in Parts B through D below. We begin with an explication of the relevant statutory provisions, and with a discussion of the case law leading to, and following from, the Supreme Court's opinion in *Apprendi.*

---

1. The PSR apparently made a mathematical error in totalling drug quantity; the total should have been 117.22 grams.

2. Section 4B1.1 provides that: "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. If a defendant meets these criteria, his offense level is determined by using a table set forth in § 4B1.1—if the table produces a higher offense level than that which the defendant would otherwise receive under the guidelines. *Id.* All defendants qualifying as career offenders receive a criminal history Category of VI. *Id.*

### A

Section 841(a) of Title 21 of the United States Code makes it "unlawful for any person knowingly or intentionally" to distribute or possess with intent to distribute a controlled substance. Section 841(b) specifies sentences for "any person who violates subsection (a)." For violations involving cocaine base, § 841(b) establishes three categories of penalties, depending upon the amount of the drug involved: § 841(b)(1)(A) sets a maximum sentence of life in prison for violations involving 50 grams or more; § 841(b)(1)(B) sets a maximum sentence of 40 years for violations involving 5 grams or more (or life, if the defendant has a prior felony drug conviction); and § 841(b)(1)(C) sets a maximum sentence of 20 years for any other amount (or 30 years, if the defendant has a prior felony drug conviction).[3]

Until 2000, well-established precedent in this circuit held that drug quantity was a sentencing factor to be determined by the trial court by a preponderance of the evidence, and not an element of the § 841 offense to be determined by a jury beyond a reasonable doubt. *See, e.g., United States v. Williams*, 194 F.3d 100, 102 (D.C.Cir.1999); *United States v. Lam Kwong–Wah*, 966 F.2d 682, 685 (D.C.Cir. 1992); *United States v. Patrick*, 959 F.2d 991, 995–96 n. 5 (D.C.Cir.1992). That precedent was consistent with the rule in the other circuits. *See Lam Kwong–Wah*, 966 F.2d at 685 (collecting cases). The fact of a defendant's prior conviction was also treated as a sentencing factor and, in *Almendarez-Torres v. United States*, the Supreme Court confirmed that prior conviction could constitutionally be determined by a judge rather than a jury. 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In accord with this precedent, standard practice in the district court was for the judge at sentencing, rather than the jury at trial, to make the necessary findings about drug quantity and prior conviction. This was the procedure the district court followed in Webb's case.

In *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Supreme Court considered the statute that makes carjacking a federal crime, 18 U.S.C. § 2119. That statute has a tripartite structure, with a base penalty of imprisonment for a maximum of 15 years, and greater penalties dependent upon whether the offense involved the injury or death of a victim. The Court suggested that it could well be unconstitutional for Congress to remove those latter determinations from a jury's consideration, pursuant to the principle that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215. To avoid doubt about the constitutionality of § 2119, the Court construed the statute "as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 252, 119 S.Ct. 1215.

The next Term, the Supreme Court decided *Apprendi v. New Jersey*. Confirming what the Court said it had "foreshadowed" in *Jones*, *Apprendi* held that due process requires that, "[o]ther than the

**3.** Section 841(b)(1)(A) and (B) establish different quantity thresholds for other drugs. They also establish mandatory minimum sentences, but Webb raises no claim concerning the mandatory minimum penalties on this appeal. *See generally United States v. Camacho*, 248 F.3d 1286, 1288–89 & n. 5 (11th Cir.2001).

fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 476, 490, 120 S.Ct. 2348. Such a fact, the Court said, was the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." Id. at 494 n. 19, 120 S.Ct. 2348. In Apprendi, the defendant had pled guilty to a state firearms charge that exposed him to a sentencing range of 5 to 10 years' imprisonment. Id. at 469–70, 120 S.Ct. 2348. However, pursuant to a separate state statute enhancing punishment for hate crimes, a defendant's maximum sentence could be increased to 20 years if the sentencing judge found, by a preponderance of the evidence, that the offense was motivated by racial bias. Id. at 470, 120 S.Ct. 2348. The judge made that finding and sentenced Apprendi to 12 years' imprisonment. Id. at 471, 120 S.Ct. 2348. The Supreme Court held this sentence unconstitutional, because it exceeded the statutory maximum for the firearms offense based upon the judge's factfinding concerning racial bias.

Apprendi contained two important caveats. First, the Court confirmed that Almendarez-Torres was still good law, and hence that a judge rather than a jury could continue to determine whether a defendant had prior convictions, regardless whether that determination increased the defendant's sentence above a statutory maximum. Id. at 489–90, 120 S.Ct. 2348. The Court added, however, that it is "arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested." Id. Second, the Court made clear that it was not suggesting "that it is impermissible for

judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute." Id. at 481, 120 S.Ct. 2348. In so doing, Apprendi expressly preserved the holding of McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), that sentencing factors that determine where a defendant's sentence falls within a statutory maximum need not be proven to a jury. Apprendi, 530 U.S. at 487 n. 13, 494 & n. 19, 120 S.Ct. 2348. Indeed, the Court suggested that it would be permissible for a legislature to set a crime's maximum sentence at, "for example, 50 years and [to] giv[e] judges guided discretion as to a few specially selected factors within that range." Id. at 490 n. 16, 120 S.Ct. 2348.

Apprendi did not address the interpretation or constitutionality of § 841. Apprendi itself involved two "separate statute[s]." Id. at 468–69, 120 S.Ct. 2348. One fixed a 10–year maximum sentence for possessing a firearm for an unlawful purpose. The other—the hate crime law—increased the maximum sentence for any crime (with certain exceptions) where a judge found by a preponderance of the evidence that the defendant committed the offense out of racial bias. Id. Section 841, by contrast, is a single statute with two subsections. One subsection, § 841(a), is entitled "Unlawful acts" and specifies that it is unlawful to knowingly or intentionally distribute a controlled substance. The other, § 841(b), is entitled "Penalties" and specifies three categories of sentences for "any person who violates subsection (a)." See § 841(b)(1)(A), (B), (C).[4] Following the logic of Apprendi, if § 841 were interpreted as a unitary statute—establishing a single crime with a statutory maximum of life in prison and three sen-

---

4. Section 841(b) includes a fourth category, § 841(b)(1)(D), which applies to offenses in-

volving (inter alia) less than 50 kilograms of marijuana and which is not applicable here.

tencing factors dependent upon drug quantity—then drug quantity in a particular case may be decided by a judge. However, if § 841 were interpreted as a tripartite statute—establishing three separate crimes with three different statutory maxima depending upon the drug quantity categories of § 841(b) (hereinafter the (A), (B), and (C) offenses)—then the drug quantity thresholds effectively are elements that must be decided by a jury.

Since *Apprendi* was decided, numerous circuits have held that *Apprendi* requires that the drug quantity thresholds of § 841(b) be treated as offense elements and thus "charged in the indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir.2001).[5] In several cases, including the instant case, the government has conceded the point. Br. for Gov't at 11-12.[6] Subsequent to the oral argument in this case, another panel of this court agreed, holding in *United States v. Fields* that, "[i]n light of *Apprendi*, it is now clear that, in drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums that are based on progressively higher quantities of drugs specified in subsections 841(b)(1)(A) or (B), the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug

quantity beyond a reasonable doubt." *United States v. Fields*, 242 F.3d 393, 396 (D.C.Cir.2001) ("*Fields I*"), *aff'd and amended on reh'g*, 251 F.3d 1041, 1043 (D.C.Cir.2001) ("*Fields II*"); *accord In re Sealed Case*, 246 F.3d 696, 699 (D.C.Cir. 2001).[7] *Fields* also held, however, that "*Apprendi* does not apply to enhancements under the Sentencing Guidelines when the resulting sentence remains within the statutory maximum." *Fields II*, 251 F.3d at 1043-44; *see United States v. King*, 254 F.3d 1098, 1102-03 (D.C.Cir.2001); *In re Sealed Case*, 246 F.3d at 698-99; *see also Fields II*, 251 F.3d at 1044 (collecting cases from other courts of appeals). These holdings are now the law of the circuit.

As will be evident in our discussion below, in order to decide this case it is important to know whether § 841 is properly interpreted as a unitary (one crime with a life maximum) or tripartite (three crimes with three increasing maxima) statute. The defendant argues that it is the latter. Although the *Fields* court did not explicitly address the question, it must have understood § 841 to be tripartite. Otherwise, and contrary both to *Fields'* holding and to the government's concession in this case, drug quantity would not need to be decided by a jury because a judge's determination would not increase the penalty beyond the prescribed statutory maximum—life imprisonment.[8] Ac-

---

**5.** *See, e.g., United States v. Nance*, 236 F.3d 820, 824-25 (7th Cir.2000); *United States v. Doggett*, 230 F.3d 160, 164-65 (5th Cir.2000); *United States v. Rogers*, 228 F.3d 1318, 1327 (11th Cir.2000); *United States v. Nordby*, 225 F.3d 1053, 1058-59 (9th Cir.2000); *United States v. Aguayo–Delgado*, 220 F.3d 926, 933 (8th Cir.2000).

**6.** *See, e.g., United States v. Fields*, 251 F.3d 1041, 1044 (D.C.Cir.2001) ("*Fields II*"); *United States v. Swatzie*, 228 F.3d 1278, 1282 (11th Cir.2000); *United States v. Meshack*, 225 F.3d 556, 575 (5th Cir.2000).

**7.** Although failure to follow these requirements constitutes error, it is not reversible error if it is either "harmless" under Federal Rule of Criminal Procedure 52(a) or not "plain" under Federal Rule of Criminal Procedure 52(b). *See Fields II*, 251 F.3d at 1045; *infra* Parts II.B–D.

**8.** In her dissent in *Apprendi*, Justice O'Connor wrote that "[t]he actual principle underlying the Court's decision may be that any fact (other than prior conviction) that has the effect, *in real terms*, of increasing the maximum punishment beyond an otherwise applicable

cordingly, the question of the statute's structure is not open for us to consider de novo, and we therefore accept for purposes of our analysis that it is tripartite, without examining the indicia of legislative intent ourselves.

**B**

██ Webb's first challenge to his sentence is that, because the jury did not determine drug quantity, he may not lawfully be sentenced to a term greater than that authorized for the (C) offense—the only one of the three § 841(b) offenses for which drug quantity is not an element. *See* 21 U.S.C. § 841(b)(1)(C); *United States v. Allen*, 960 F.2d 1055, 1058 (D.C.Cir.1992) (holding that § 841(b)(1)(C) is satisfied if the defendant's violation involves "*any* detectable amount" of cocaine base). Further contending that the maximum sentence under the (C) offense is 20 years' imprisonment, Webb argues that, in light of *Apprendi*, he should not have been sentenced to any more than 20 years.

 Webb did not raise this objection below, and the parties agree that as a consequence we must review it under the four-pronged plain error standard of Federal Rule of Criminal Procedure 52(b). *See* FED.R.CRIM.P. 52(b); *Fields II*, 251 F.3d at 1045; *In re Sealed Case*, 246 F.3d at 698. Under that standard, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting

*United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467, 117 S.Ct. 1544 (additional internal quotations and citations omitted). In evaluating whether an error is "plain" in a case like Webb's, where the law has changed since the time of the trial, "it is enough that an error be 'plain' at the time of appellate consideration." *Id.* at 468, 117 S.Ct. 1544.

██ The problem with Webb's claim to a 20-year maximum sentence is that, although the basic (C) violation is subject to a 20-year cap, the statute provides that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years." 21 U.S.C. § 841(b)(1)(C). Moreover, as discussed above, in *Almendarez–Torres* the Supreme Court expressly held that an enhancement for prior convictions need not be based on a jury's finding—a holding the Court preserved in *Apprendi*. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)). Webb nonetheless notes the skepticism about *Almendarez–Torres* expressed in

range must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 543–44, 120 S.Ct. 2348 (O'Connor, J., dissenting). Such a principle, Justice O'Connor said, would also apply "to all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (e.g., the federal Sentencing Guidelines)." *Id.*

at 544, 120 S.Ct. 2348. But this expansive reading of *Apprendi* would effectively overrule *McMillan*, a step the majority expressly stated it was not taking. *See Apprendi*, 530 U.S. at 487 n. 13, 120 S.Ct. 2348. As noted above, this circuit has taken a narrower view of the meaning of *Apprendi*. *See Fields II*, 251 F.3d at 1043–44; *In re Sealed Case*, 246 F.3d at 698–99.

*Apprendi,* and asks us to disregard the earlier case because he counts five Justices as no longer supporting its holding. That, of course, we may not do. *See Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal quotation omitted)). Thus, taking into consideration the district court's recidivism finding, Webb faced a maximum sentence of 30 years even if he had been convicted of the (C) offense alone. And because he was only sentenced to 30 years, Webb was not sentenced, as he claims, to a term greater than the statutory maximum of § 841(b)(1)(C).

### C

If this case were not complicated by the application of the career offender guideline, the fact that the defendant received a sentence within the statutory maximum of the (C) offense might well end the analysis, notwithstanding that a judge rather than a jury made a quantity determination that could have exposed the defendant to a higher maximum. In such cases, some courts of appeals have held that, because the defendant was sentenced below (C)'s maximum, there was no *"Apprendi* error" at all.[9] Such an approach seems appropri-

ate where the defendant was charged with and convicted of the (C) offense (or with an unspecified § 841(b) offense not based on quantity). In such a case, drug quantity is not an element of the offense that must be decided by a jury, and the defendant's sentence was determined by the Sentencing Guidelines' drug quantity table, U.S.S.G. § 2D1.1(c), which assigns offense levels based on drug quantities rather than statutory maxima.[10]

Other courts of appeals have found *"Apprendi* error" where the trial court determined a drug quantity that would qualify the defendant for an enhanced maximum sentence, but have concluded that the error did not "affect substantial rights," FED. R.CRIM.P. 52, because the defendant's actual sentence fell below the maximum for the (C) offense.[11] This approach is appropriate where the defendant, like Webb, was charged with and convicted of the (A) or (B) offense. *See* App. 11–12 (indictment); App. 216 (judgment of conviction). In such a case, there is error because an element of the offense (the quantity threshold) was not submitted to the jury. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Such an error does not affect the defendant's substantial rights, however, because the application of the Sentencing Guidelines' drug quantity table resulted in the same guidelines sentence the defendant would have received had he only been convicted of (C).

---

9. *See, e.g., United States v. Angle,* 254 F.3d 514, 518 (4th Cir.2001); *United States v. Meshack,* 225 F.3d at 576.

10. The drug quantity table assigns a defendant a base offense level depending upon the type and quantity of the drug involved in his offense. For example, the drug quantity table assigns a base offense level of 32 to a crime involving at least 50 but less than 150 grams of cocaine base. *See* U.S.S.G. § 2D1.1(c)(4). For a person with Webb's criminal history

category of IV (prior to application of the career offender guideline), this results in a sentencing range of 168 to 210 months—notwithstanding the statutory maximum of 360 months for an offense involving 50 grams or more of cocaine base. *See* U.S.S.G. ch. 5, pt. A.

11. *See, e.g., United States v. Garcia–Guizar,* 234 F.3d 483, 488 (9th Cir.2000); *United States v. Heckard,* 238 F.3d 1222, 1235 (10th Cir.2001).

But Webb's case presents an additional complication. Because of his two prior felony convictions, Webb was not sentenced under the drug table but instead under the career offender guideline, U.S.S.G. § 4B1.1. *See supra* note 2. Unlike the former, which determines offense level based upon drug quantity, the latter determines a defendant's offense level based upon his "offense statutory maximum," which is defined as the "maximum term of imprisonment authorized for *the offense of conviction* ... including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record." U.S.S.G. § 4B1.1, comment. n.2 (emphasis added). According to Guideline § 4B1.1, a career offender convicted of an offense with a statutory maximum of life receives an offense level of 37, while a defendant convicted of an offense with a maximum of 25 years or more (but not life) receives an offense level of only 34. All career offenders receive a criminal history category of VI.

If the district court had treated Webb as having been convicted of the (C) offense, which carries a (recidivist-enhanced) maximum of 30 years, § 4B1.1 would have assigned Webb an offense level of 34. This level, combined with a criminal history category of VI, would have yielded a sentencing range of 262 to 327 months—for a maximum sentence of 27.25 years. *See* U.S.S.G. ch. 5, pt. A. However, because the district court treated Webb as having been convicted of the (A) and (B) offenses, both of which carry (recidivist-enhanced) statutory maxima of life, § 4B1.1 assigned Webb an offense level of 37. That level, combined with Webb's criminal history category of VI, produced a sentencing range of 30 years to life. Thus, Webb argues, although the district court only sentenced him to 30 years, that sentence was greater than the sentence he would have received had he been convicted of the

(C) offense alone. And that, Webb argues, constitutes plain error. *Cf. United States v. Camacho*, 248 F.3d 1286, 1290 n. 7 (11th Cir.2001) (holding that error "occurs when a defendant in a section 841 case is sentenced on the basis of [a judge's determination of] drug quantity and the sentence cannot logically be construed as a section 841(b)(1)(C) sentence"). Accordingly, in order to determine whether Webb's sentence passes muster under the plain error standard, we must consider whether the district court's application of the career offender guideline does so.

### D

The government contends that the district court's application of Guideline § 4B1.1 was not plain error because it was not error at all. *See Johnson*, 520 U.S. at 466–67, 117 S.Ct. 1544 (noting that first prong of plain error standard requires that there be "error.") As the government notes, even after *Apprendi* and *Fields*, a judge may still make quantity determinations that affect sentencing as long as the sentence a defendant receives falls within the maximum sentence authorized by § 841(b)(1)(C). The government argues that, subject to this cap, a sentencing court can determine the "offense of conviction" (and hence the "offense statutory maximum") within the meaning of § 4B1.1 based upon the court's own determination of drug quantity—even if the defendant was only properly convicted of the (C) offense.

The government's argument may well support a conclusion that any error that was committed here was not "plain": courts long thought that the drug thresholds of § 841(b) could be determined by judges, and it is plausible that the Sentencing Commission likewise expected judges to determine the meaning of "offense of conviction" based on nothing more than their own determinations of drug quantity. In light of this circuit's post-

*Apprendi* decision in *Fields*, however, we conclude that the district court's application of § 4B1.1 was nonetheless error. After *Fields*, a conviction for the (A) or (B) offense is not proper unless the relevant drug threshold has been stated in the indictment, submitted to the jury, and proven beyond a reasonable doubt. *Fields II*, 251 F.3d at 1043. Whatever the Sentencing Commission thought constituted an "offense of conviction" when the guidelines were initially promulgated, we are confident that it intended that only a conviction that was in accord with governing law would qualify. *See United States v. Gilliam*, 255 F.3d 428, 436 (7th Cir.2001) (finding error where court calculated sentence under career offender guideline based on judge's determination of drug quantity); *United States v. Saya*, 247 F.3d 929, 940–42 (9th Cir.2001) (same); *United States v. Rogers*, 228 F.3d 1318, 1329–30 (11th Cir.2000) (holding that without a quantity finding by the jury, the "offense statutory maximum" under § 4B1.1 must be that of § 841(b)(1)(C)).

But although the district court committed error in its application of § 4B1.1, and even assuming that error were plain, Webb's sentence nonetheless survives plain error review under Rule 52(b) because his underlying convictions for the (A) and (B) offenses survive such review. Counts One through Three of the indictment expressly charged Webb with offenses under § 841(b)(1)(A) and (B), and expressly alleged that he distributed 50 grams or more of cocaine base on one occasion (Count Three), and 5 grams or more on two other occasions (Counts One and Two). App. 11–12. Under *Fields*, those quantities constitute elements of the

charged offenses, and by failing to submit them to the jury, the district court erred. As the Supreme Court directed in *Johnson*, however, we may not "exercise [our] discretion to notice" such an error unless the fourth prong of plain error review is satisfied: the error must "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." 520 U.S. at 469–70, 117 S.Ct. 1544; *see Fields II*, 251 F.3d at 1045 (noting that plain error review is applicable to *Apprendi* error and finding plain error); *Gallego*, 247 F.3d at 1198 (applying plain error review but finding none); *United States v. Nance*, 236 F.3d 820, 824 (7th Cir.2000) (same). That prong is not satisfied here.[12]

In *Johnson*, the Court considered the validity of Johnson's conviction for perjury under 18 U.S.C. § 1623. The trial court, without objection and following then-settled law, had instructed the jury that the element of materiality was a question for the court to decide, and that it had already determined that the statements at issue were material. After Johnson's conviction but before her appeal, the Supreme Court decided *United States v. Gaudin*, 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), holding that the materiality of a false statement under 18 U.S.C. § 1001 must be decided by the jury rather than the court. *See Johnson*, 520 U.S. at 464, 117 S.Ct. 1544. When Johnson's perjury case came before the Supreme Court, it held that the trial court had committed error by failing to submit the materiality question to the jury. The Court nonetheless sustained the conviction, holding that the error did not affect the integrity of the proceeding because the evidence that Johnson's false statements were material was "overwhelming" and "essentially un-

---

**12.** As in *Johnson*, in light of our conclusion that the trial court's error does not satisfy the fourth prong of the plain error standard, we need not consider whether it satisfies the

third prong: that the error "affec[t] substantial rights." *Johnson*, 520 U.S. at 468–69, 117 S.Ct. 1544.

controverted." *Id.* at 470, 117 S.Ct. 1544; *cf. Neder v. United States*, 527 U.S. 1, 17, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (finding that failure to submit element of offense to jury was harmless error where the "omitted element was uncontested and supported by overwhelming evidence").[13]

As in *Johnson*, the evidence of the drug quantities charged in Counts One through Three of Webb's indictment was both overwhelming and uncontroverted. Those counts involved three separate transactions: the government alleged that on each occasion, Webb sold a quantity of crack to the government's cooperating witness. For the jury to have convicted Webb of each of these three incidents, the jurors must have believed that Webb engaged in each of the three transactions and was responsible for the amounts he provided. The specific amount involved in each transaction was established by the testimony and report of a government chemist, and was confirmed by tape recordings of conversations between Webb and Johnson, in which the two discussed the quantities of crack involved in the transactions. Webb did nothing to challenge the evidence of

drug quantity at either trial or sentencing, and even on appeal offers no scenario under which the jury could have convicted him of the transactions, yet rationally found that they involved different quantities than those testified to by the government chemist. *See Nance*, 236 F.3d at 826 (finding *Apprendi* error not plain because "[i]f this jury was going to convict [defendant] at all ... there is simply no way on this record that it could have failed to find that he was conspiring to distribute 5 grams or more of crack cocaine"); *United States v. Swatzie*, 228 F.3d 1278, 1284 (11th Cir.2000) (same); *cf. Neder*, 527 U.S. at 19, 119 S.Ct. 1827 (finding omission of element in jury instructions harmless because "defendant did not, and apparently could not, bring forth facts contesting the omitted element").[14]

Webb contends that he had no reason to contest drug quantity below because his trial occurred before *Apprendi* was issued, and hence before the drug quantity thresholds were regarded as elements of the § 841 offenses. But even accepting Webb's contention that he had no reason to contest quantity at trial,[15] he had every

---

**13.** *Johnson* and *Neder* both involved a district court's failure to submit an element to the jury. Webb contends that those cases are inapplicable here. He argues that the error in this case was not that the district court failed to submit the quantity elements of the (A) and (B) offenses to the jury, but rather that the district court sentenced Webb as if he had been convicted of (A) and (B) when in fact he had only been convicted of (C). We need not decide whether *Johnson* and *Neder* would apply where a defendant was convicted only of the (C) offense, because in this case the (A) and (B) offenses were charged in the indictment and entered in the court's judgment of conviction. Thus, the error here was the district court's failure to submit an element (the drug quantity thresholds of (A) and (B)) to the jury for determination beyond a reasonable doubt—the same error as in *Johnson* and *Neder*.

**14.** Webb's case is considerably different from that of the defendant in *Fields*. In *Fields*, although the court recognized the application of Rule 52(b) to *Apprendi* error, it did not find "overwhelming" proof that the quantity of drugs involved exceeded the threshold required to authorize a maximum sentence of life imprisonment under § 841(b). *Fields II*, 251 F.3d at 1045. By contrast to Webb's case, in *Fields* the government had recovered only 7 grams of cocaine base and 20 kilograms of marijuana (compared to 50 grams of the former and 1000 kilograms of the latter required to authorize a life maximum), and was forced to rely on "imprecise testimony" of cooperating witnesses and vague admissions by the defendant. *See id.* at 1044–45.

**15.** *But see Williams*, 194 F.3d at 102 (noting that defendant—who was faced with the same pre-*Apprendi* circuit precedent as Webb—ar-

incentive to contest it at sentencing. The presentence report's recommendations concerning the quantity of drugs involved in Webb's transactions, and the district court's adoption of those recommendations, dramatically affected Webb's sentencing range. Yet, while Webb "noted one factual inaccuracy" in the presentence report regarding an unrelated issue, he did not dispute the accuracy of the drug quantities there reported. PSR at 12 (noting Webb's objections). Moreover, whatever his incentives below, Webb surely has an incentive on appeal to suggest a scenario under which he could plausibly have disputed the drug quantities specified by the chemist. Even now, however, he suggests none. *See Johnson,* 520 U.S. at 470, 117 S.Ct. 1544 (noting that "[b]efore the Eleventh Circuit and in her briefing before this Court, petitioner has presented no plausible argument" that the false statement for which she was convicted was not material).

In sum, because the evidence of drug quantity was overwhelming and uncontroverted, and because even now Webb offers no plausible scenario under which it could be disputed, "there is no basis for concluding that the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,'" and hence no grounds for noticing that error under Rule 52(b). *Id.* Webb's convictions for selling 50 or more and 5 or more grams of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A) and (B), therefore survive plain error review and remain intact. As a consequence, the sentence that

gued at trial that drug quantity was an element of a § 841 offense); *Rogers,* 228 F.3d at 1320 (noting that in reliance on *Jones,* defendant argued that drug quantity was an element that had to be determined by the jury).

16. For that reason, we reject Webb's argument (made in a footnote) that the district court also imposed an improper term of supervisory release, without deciding whether

was based on those convictions would stand even if it had exceeded the statutory maximum for the (C) offense. *See Nance,* 236 F.3d at 826; *Swatzie,* 228 F.3d at 1284.[16] That result follows a fortiori in a case like this one, in which the sentence Webb actually received was below the statutory maximum. *See Gilliam,* 255 F.3d at 436 (affirming defendant's sentence, notwithstanding that district court erred in applying the career offender guideline as if defendant had been convicted of an (A) offense, because the error passed plain error review); *Saya,* 247 F.3d at 940–42 (same).

### III

Webb raises three additional arguments on this appeal, one relating to his sentence and two concerning the validity of his convictions. Only the third requires any extended discussion.

### A

■ Defendant's additional sentencing contention is that the district court erred by failing to reduce his offense level by two points for acceptance of responsibility, pursuant to Sentencing Guideline § 3E1.1. Because Webb neither sought this reduction nor objected to the district court's failure to grant it sua sponte, our review is again for plain error. The standard of review is unimportant, however, because the district court did not commit error, plain or otherwise.

Webb is correct in contending that the length of the term imposed is appropriate only for a defendant convicted of the (A) offense. Similarly, our conclusion that the (A) and (B) convictions survive review eliminates any argument (although Webb has made none) that those convictions should themselves be vacated because they carry collateral consequences beyond those created by the alleged differential in sentences.

The Sentencing Guidelines require a two-point reduction in a defendant's offense level "[i]f the defendant *clearly* demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (emphasis added). The commentary to this provision explains that acceptance involves "truthfully admitting the conduct comprising the offense(s) of conviction." *Id.*, comment. n.1(a).[17] Webb never did so. Although upon arrest he did waive his *Miranda* rights and admit to possession of the crack found in his apartment and charged in Count Four, Webb never admitted to the transactions for which he was convicted under Counts One, Two and Three. During his interview with the probation officer who prepared his presentence report, Webb "declined to discuss his involvement" in the offenses of conviction. PSR ¶ 8. When he stood before the judge at sentencing and was asked whether he wished to speak, Webb once again declined. 8/13/99 Tr. at 14. As we have said before, "[w]hile the district court lacks the power to force a defendant to express remorse he does not feel, it is not required to reward a remorseless defendant with a decrease in his offense level." *United States v. Dozier*, 162 F.3d 120, 128 (D.C.Cir.1998). Accordingly, the court did not err in failing to reduce Webb's offense level for acceptance of responsibility.[18]

## B

▉ Webb also contends that the court erred, under Federal Rule of Evidence 404(b), in rejecting his request to bar the government's cooperating witness, Danon Johnson, from testifying about his prior drug transactions with Webb. *See* FED. R.EVID. 404(b) (governing the admissibility of "[e]vidence of other crimes, wrongs, or acts"). We need spend little time on this point because even if admission of the testimony were erroneous, it was also harmless. *See* FED. R.CRIM. P. 52(a). The government tape-recorded the conversations between Webb and Johnson that took place in connection with the three transactions charged in Webb's indictment. Those recordings contained numerous references to the duo's prior drug transactions, and were admitted into evidence without any objection from Webb. Even on appeal, he does not dispute the admissibility of the tapes. We can perceive no material additional harm that Webb suffered as a consequence of Johnson's testimony on the same subjects, particularly in light of the overwhelming evidence of Webb's guilt. *Cf. United States v. Lampkin*, 159 F.3d 607, 615 (D.C.Cir.1998) (holding inadmissible hearsay harmless where "merely cumulative of other evidence adduced at trial"); *United States v. Walls*, 70 F.3d 1323, 1327 (D.C.Cir.1995)

17. The commentary also states that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. n.2. Although "[c]onviction by trial ... does not automatically preclude a defendant from consideration for such a reduction," it will be only the "rare situation[ ]" in which a defendant goes to trial and receives the § 3E1.1 deduction. *Id.* Webb's is clearly not that situation—not because he put the government to its proof by going to trial, but because (as noted below) even after his conviction he failed either to admit guilt or express remorse.

18. Webb further contends that his failure to accept responsibility at sentencing was due to the ineffective assistance of his counsel, who he claims failed to prepare him properly for the proceeding. But nothing in the transcript of the sentencing proceeding suggests that it was Webb's lack of preparation, rather than his own recalcitrance, that caused his failure to accept responsibility. *See* 8/13/99 Tr. at 15 (statement by the sentencing judge that Webb was evincing "an attitude ... like it's no big thing").

(holding erroneous Rule 404(b) ruling harmless where evidence against defendant was overwhelming).

C

Finally, we consider Webb's claim that the district court erred in denying his motion to suppress evidence obtained during the September 15, 1998 search of his apartment. The search was undertaken pursuant to a warrant, which authorized a search for books and records relating to narcotics transactions. It resulted in the seizure of evidence that became the basis of Count Four of the indictment, including 6.52 grams of crack, $15,114 in cash, drug packaging supplies, and a piece of paper with the name and pager number of Webb's New York supplier.

■ Webb argued below and argues here that the warrant was issued without probable cause because the affidavit upon which it was based recited stale information: the affidavit was sworn and the warrant issued on September 14, 1998, 109 days after the final drug transaction took place between Webb and Johnson on May 28, 1998. The district court denied Webb's motion to suppress, finding that although defendant's arguments were "certainly not frivolous," "a reasonable judicial officer could determine that it is likely that a person who is engaged in drug selling in May, having not been arrested, would continue to be engaged in such activities three and a half months later." 4/27/99 Tr. at 5. Like the district court, we give "a determination of probable cause by a federal magistrate ... 'great deference.' " *United States v. Hubbell*, 167 F.3d 552, 559 (D.C.Cir.1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see Ornelas v. United States*, 517 U.S. 690, 698–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

■■ We find the issuance of this warrant troubling. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause...." U.S. CONST. amend. IV. To protect that right, the Supreme Court has declared that the facts supporting a warrant must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932). Our court has interpreted *Sgro* to mean that although the time between the application for a warrant and the discovery of the evidence supporting that application is "not controlling," it is nonetheless important. *See Schoeneman v. United States*, 317 F.2d 173, 177 (D.C.Cir.1963). In *Schoeneman*, we found no probable cause to believe that classified government documents, last seen in the defendant's house 107 days before the application for the warrant was made, were still present in that house on the date of the application. *Id.* at 177–78.

In this case, as in *Schoeneman*, the search warrant sought documents, here relating to Webb's alleged drug activity. *See* App. 184–85. As in *Schoeneman*, the warrant was issued more than 100 days after the government last had direct information that there was evidence of criminal activity in the defendant's home. Although the government's application included its affiant's statement that those involved in drug transactions typically keep records of such transactions in their homes, the question remains whether there was probable cause to believe that such records would still be there four months after the last known transaction.

■ But even if the affidavit were insufficient to establish probable cause, the Supreme Court has held that when police officers obtain evidence through a search

incident to a warrant, "suppression is appropriate only if the officers ... could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C.Cir.1990).[19] On that standard, suppression is inappropriate in this case. Although *Schoeneman* concluded that 107-day-old evidence was too stale to support probable cause in that case, the evidence there consisted solely of an informant's statement that he had seen classified documents in the defendant's home on that single occasion. *Schoeneman*, 317 F.2d at 175–77. Here, by contrast, the affidavit reported a series of three drug transactions between Webb and Johnson, transactions that verified Johnson's statement that Webb had been a supplier of narcotics "for an extended period of time." App. 188. Courts have been considerably more lenient in assessing the currency of information supporting probable cause in the context of extended conspiracies than in the context of single-incident crimes. *See generally United States v. Schaefer*, 87 F.3d 562, 568 (1st Cir.1996); *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir.1988); *In re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 135–36 (D.C.Cir.1981). While Webb was not ultimately charged with conspiracy, the warrant application expressly sought evidence regarding the crime of conspiracy to distribute cocaine

base. *See* App. 190. Moreover, even if Webb did not have drugs in his apartment at the time of the application, it would not necessarily have been unreasonable for an officer to conclude that a longtime drug dealer, whose most recent known deal had occurred three months earlier, would still retain papers permitting him to get back in touch with his customers or—as turned out to be the case—his supplier.

In sum, whatever may be said of the search warrant affidavit in this case, we cannot say "that no reasonably well trained police officer could have believed that there existed probable cause to search" Webb's apartment. *Leon*, 468 U.S. at 926, 104 S.Ct. 3405. Accordingly, the district court did not err in failing to suppress the evidence recovered from the search.

## VI

We conclude that neither *Apprendi* and its progeny, nor the Sentencing Guidelines, compel a conclusion that the sentence imposed upon Webb was reversible error. Nor do we find reversible error in the district court's evidentiary rulings or in its denial of Webb's motion to suppress. Webb's convictions and sentence are therefore

*Affirmed.*

---

**19.** *Leon* also permits suppression if "the magistrate abandoned his detached and neutral role," or if the officers were "dishonest or reckless in preparing their affidavit." 468 U.S. at 926, 104 S.Ct. 3405. There is no suggestion in the record that either circumstance applies to this case.