Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 6, 2002          Decided June 17, 2003

No. 01-3087

UNITED STATES OF AMERICA,
APPELLEE

v.

SPENCER L. JOHNSON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 98cr00062–01)

———

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause and filed the briefs for appellant. *A. J. Kramer*, Federal Public Defender, entered an appearance.

*Valinda Jones*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Roy W. McLeese III*, and *Thomas C. Black*, Assistant U.S. Attorneys.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: TATEL and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: In this appeal we consider Spencer Johnson's challenges to his conviction and sentence for possessing with intent to distribute 50 grams or more of cocaine base. Johnson levels one challenge premised on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and three attacking the district court's refusal to depart downward from the sentence prescribed by the United States Sentencing Guidelines (U.S.S.G.). Although the appeal poses procedural complexities as a consequence of the loss and later recovery of the court reporter's notes of Johnson's sentencing hearing, the substantive analysis of Johnson's claims is relatively straightforward. For the reasons stated below, we reject the defendant's arguments and affirm the judgment of the district court.

I

On June 22, 1998, a jury found Johnson guilty of possessing with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and of simple possession of marijuana, in violation of 21 U.S.C. § 844(a). Johnson was sentenced to 121 months' incarceration and 5 years' supervised release for the first count, and 12 months' incarceration and one year of supervised release for the second, to be served concurrently. Johnson appealed his conviction, arguing that the prosecutor had made improper statements in his closing argument to the jury. This court found that, although the prosecutor's remarks were improper, the error was harmless. *See United States v. Johnson*, 231 F.3d 43, 49 (D.C. Cir. 2000) [hereinafter *Johnson I*].

Johnson also advised the court that he wanted to raise several challenges to his sentence, particularly a claim that the district court should have granted a two-level adjustment to his offense level under the so-called "safety valve" provisions of the Sentencing Guidelines, U.S.S.G. §§ 2D1.1(b)(6) & 5C1.2. Johnson contended that he was hampered in making

these challenges, however, because the court reporter's notes and any transcript of the sentencing hearing had been lost by the Miller Reporting Company, and because the sentencing judge—who under such circumstances would normally have approved a reconstruction of the proceedings pursuant to Federal Rule of Appellate Procedure 10(c)—had fallen ill and was unable to reconstruct the record. Agreeing that Johnson had been disadvantaged, the court remanded the case for resentencing "[i]n light of these unusual circumstances." 231 F.3d at 45.

On remand, the circumstances became even more unusual. Shortly after the decision in *Johnson I*, Miller Reporting found the court reporter's notes and reproduced the missing transcript. The government then moved to recall this court's mandate and to reopen the appeal to permit Johnson to raise any issues that appeared in the newly-available transcript, arguing that the existence of the transcript rendered resentencing unnecessary. In response, the court issued an order denying the government's motion, "without prejudice to the matters set forth by [the government] . . . being presented to the district court for its consideration." *United States v. Johnson*, No. 98–3111, Order at 1 (D.C. Cir. Mar. 1, 2001).

At the resentencing, Johnson abandoned the safety valve argument and instead raised several claims that he had not asserted at his original sentencing. Chief among these was an attack on his conviction and sentence based upon the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a decision that had not been issued until after Johnson submitted his briefs in *Johnson I*. Johnson also contended that he was entitled, on a number of grounds, to a departure from the sentence otherwise dictated by the Sentencing Guidelines. Finally, Johnson argued that the resentencing court should consider all of these claims de novo, despite his failure to raise them at his original sentencing.

The district court rejected Johnson's request for a de novo sentencing. Finding that the limited purpose of the remand had evaporated once the reporter's notes were discovered and transcribed, and that the transcript showed that there was

"nothing wrong with what [the original sentencing judge] did, why he did it, or how he did it," the court held that "the purpose for the remand [would best be] served by reissuing or newly issuing" the same judgment and commitment. Resentencing Tr. at 48–49 (July 5, 2001). In the alternative, the court held that there was no *Apprendi* error in Johnson's trial or sentencing, *see id.* at 50–51, and that the defendant was entitled to "no downward adjustment of any kind," Resentencing Tr. at 9 (July 16, 2001); *see id.* at 13. Accordingly, the court reimposed the original sentence.

Johnson now appeals from his resentencing. Of the many arguments raised during the remand, he presses only four here. The first is the claim of *Apprendi* error, which we consider in Part II below. The remaining three are claims for departure from the Sentencing Guidelines, which we consider in Part III.

## II

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Johnson contends that both his conviction and his sentence under § 841(b)(1)(A)(iii), for a drug offense involving 50 grams or more of cocaine base, violate this rule. We begin by addressing the appropriate standard of review, and then consider the merits of Johnson's *Apprendi* argument in Parts II.B and II.C below.

## A

Ordinarily, we would review an *Apprendi* claim not raised at trial or sentencing only for plain error under Federal Rule of Criminal Procedure 52(b)—even when *Apprendi* itself was not issued until after the sentencing took place. *See United States v. Cotton*, 535 U.S. 625, 631 (2002); *see also United States v. Saro*, 24 F.3d 283, 286–87 (D.C. Cir. 1994). Johnson asks us to eschew this usual course in light of the remand for resentencing that was ordered in *Johnson I*. Although he did

not raise any of his current objections at his trial or initial sentencing, Johnson maintains that the district court should have treated the resentencing as a "replacement" sentencing and reviewed his claims de novo. He further contends that this court should now review the district court's rejection of those claims as if they had been properly raised below. While he does not quite close the loop, the implication of Johnson's argument is that we should review the district court's decision under the harmless error standard of Rule 52(a). *See Neder v. United States*, 527 U.S. 1, 7–9 (1999).

At the time this appeal was argued, the standard governing remands for resentencing was that stated in *United States v. Whren*: "[U]pon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result." 111 F.3d 956, 960 (D.C. Cir. 1997). After oral argument in this case, the en banc court decided *United States v. McCoy*, 313 F.3d 561 (D.C. Cir. 2002). In *McCoy*, we held that, when a defendant seeks to raise for the first time on remand an argument that was only "*contingently* relevant in the initial sentencing (but the contingency did not then materialize)," and when "the district court's action on remand renders the contention determinative," a defendant may raise the previously contingent issue if "she [can] establish 'good cause' . . . for not having raised it sooner." *Id.* at 561–62.

In neither *McCoy* nor *Whren* did the defendant seek to raise on remand an argument that had become newly available because of an intervening change in law, like the *Apprendi* decision in Johnson's case. Nor need we decide today the standard that would ordinarily apply in such cases. As we have noted, this is an unusual case that became even more unusual as events unfolded. Although we might not have employed the same adjective, we are sympathetic to the district judge's statement that it "seem[ed] surrealistic" to pretend that the transcript of the original sentencing did not exist when it did. Resentencing Tr. at 25 (July 5, 2001). As the judge put it: "Why should I act as though there is no

transcript and search for error and problems when we now have the transcript and there was no error and there are no problems?" *Id.* at 37.

We have no good answer to the judge's query. Indeed, we have no good answer as to why this case should be treated any differently than if the missing transcript had been discovered before our decision in *Johnson I*, rather than shortly thereafter. That is particularly so since defendant's *Apprendi* claim has nothing to do with anything he discovered in the lost transcript. We therefore conclude, in retrospect, that we should have granted the government's motion to recall the mandate and simply reinstated Johnson's initial appeal. If we had done that, we would have reviewed Johnson's *Apprendi* argument under the plain error standard, notwithstanding the intervening change in law. *See Cotton*, 535 U.S. at 631; *Johnson v. United States*, 520 U.S. 461, 464, 466–67 (1997); *United States v. Webb*, 255 F.3d 890, 897 (D.C. Cir. 2001).[1] And we see no reason to do otherwise today simply because the Miller Reporting Company first lost, and then found, the court reporter's notes.[2]

Johnson contends that there is a good reason to modify our standard of review: considering his claims under a more liberal standard, he argues, would deter Miller Reporting

---

[1] *See also United States v. Perkins*, 161 F.3d 66, 73 (D.C. Cir. 1998) (noting that, although the Supreme Court applies plain rather than harmless error review to claims premised on intervening changes in law notwithstanding that an objection would have been futile at the time of trial, it evaluates the plainness of the error based on the state of the law at the time of appellate consideration).

[2] At the resentencing, the government argued for application of an even more restrictive "cause and prejudice" standard of review because the defendant failed to raise his *Apprendi* claim the first time he came before this court. *See generally Perkins*, 161 F.3d at 71. Johnson had the opportunity to do so since *Apprendi* was issued four months prior to the decision in *Johnson I*, albeit after the briefs were filed. The government has abandoned this argument on appeal, Appellee's Br. at 16 n.4, and we need not consider it because it makes no difference to our disposition of the case, *see Perkins*, 161 F.3d at 71.

from neglecting its obligations in the future. We are doubtful that we have the authority to alter the standard of review of a defendant's appeal in order to deter or punish a court reporting company. *Cf. Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–56 (1988) (holding that "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)" in order to deter prosecutorial misconduct); *United States v. Tucker*, 8 F.3d 673, 675 (9th Cir. 1993) (en banc) ("[A] court of appeals 'may not disregard the doctrine of harmless error' in order to punish what it views as the misconduct of a court reporter." (quoting *Bank of Nova Scotia*, 487 U.S. at 256)). Moreover, whatever may be the deterrent value of remanding a case for resentencing when a transcript has been lost, *see Johnson I*, 231 F.3d at 49, we find it difficult to fathom how a decision by this court to review a defendant's case under a harmless rather than plain error standard would have any effect at all on a reporting company's behavior. There are, in any event, far more direct ways of penalizing a court reporting company that fails to live up to its contractual and statutory responsibilities.[3] Accordingly, we will employ the usual plain error standard in reviewing Johnson's *Apprendi* claim.

## B

Having finished wrestling with the standard of review, we find the balance of the analysis relatively straightforward. Johnson asserts that the district court committed *Apprendi* error by entering a judgment of conviction under § 841(b)(1)(A)(iii), which is prescribed for drug offenses involving 50 grams or more of cocaine base, rather than under § 841(b)(1)(C), which applies where the violation involves

---

[3] *See Tucker*, 8 F.3d at 677 (recognizing that federal courts "undoubtedly have the authority to sanction dilatory court reporters" through, for example, the imposition of fines); *United States v. Johnson*, 732 F.2d 379, 383 (4th Cir. 1984) ("Both [the court of appeals] and the district court have supervisory powers over court reporters including the power to punish for civil contempt in appropriate cases.").

" '*any* detectable amount' " of a controlled substance, *Webb*, 255 F.3d at 897 (quoting *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992)). The judgment of conviction was error, Johnson contends, because the trial court did not instruct the jury that to convict it must find beyond a reasonable doubt: (1) that the quantity of drugs at issue was at least 50 grams; and (2) that the drug in question was a form of cocaine base known as "crack." In the absence of such instructions, Johnson argues, he could not lawfully have been convicted of violating anything other than § 841(b)(1)(C), which has no requirements regarding drug quantity or type.

Johnson further contends that this error led to several errors in sentencing. Although the term of imprisonment that Johnson received (121 months) is below the statutory maximum (20 years) applicable to the § 841(b)(1)(C) charge, Johnson asserts that the term of supervised release that the court imposed (5 years) is greater than the maximum permitted under § 841(b)(1)(C)—which he maintains is 3 years—and is appropriate only for a conviction under § 841(b)(1)(A)(iii).[4]

---

[4] Johnson's argument is based on 18 U.S.C. § 3583(b)(2), which states that "[e]xcept as otherwise provided," the term of supervised release for a Class C felony shall be "not more than three years." Section 841(b)(1)(C), which carries a 20–year maximum term of imprisonment, is a Class C offense. *See* 18 U.S.C. § 3559(a)(3). Section 841(b)(1)(C), however, expressly provides for a term of supervised release of "*at least* 3 years." 21 U.S.C. § 841(b)(1)(C) (emphasis added). At the time of Johnson's trial, there was a split in the circuits regarding the maximum term of supervised release under § 841(b)(1)(C). *Compare, e.g.*, *United States v. Kelly*, 974 F.2d 22, 24 (5th Cir. 1992) (holding that 3 years was the maximum term), *with United States v. Garcia*, 112 F.3d 395, 397–98 (9th Cir. 1997) (holding that a term of supervised release greater than 3 years could be imposed). After the oral argument of this appeal, Congress resolved the circuit conflict by adding the words "Notwithstanding section 3583 of title 18" to the supervisory release provision of § 841(b)(1)(C), *see* Pub. L. No. 107–273, § 3005(a), 116 Stat. 1758, 1805 (Nov. 2, 2002), thus making it clear that the term of supervised release for a conviction under that section can exceed 3 years, *see* H.R. CONF. REP. NO. 107–685, at 188–89 (2002).

Johnson also argues that, while there is no mandatory minimum sentence under § 841(b)(1)(C), his conviction under § 841(b)(1)(A)(iii) subjected him to the latter's mandatory minimum sentence of 120 months. Finally, in an argument we reserve for consideration until Part II.C below, Johnson contends that if he had been treated as possessing non-crack cocaine base rather than crack cocaine, his sentencing guideline range would have been 21 to 27 months, rather than the 121- to 151-month range that was applied in his case, *see* Presentence Invest. Rep. at 7 (June 1, 2001). *Compare* U.S.S.G. § 2D1.1(c)(12), *with id.* § 2D1.1(c)(4).

Under the plain error standard, we can correct these alleged errors only if there was "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson*, 520 U.S. at 467 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). Although the government argues that Johnson's claims fail all four prongs of the plain error test, its argument regarding the fourth prong is directly supported by the Supreme Court's decision in *United States v. Cotton* and our own opinion in *United States v. Webb*, and is more than sufficient to dispose of this appeal. Accordingly, we proceed directly to a discussion of that prong, and in particular do not pause to consider the validity of any of Johnson's claims of error.

The defendants in *Cotton* were sentenced in accordance with § 841(b)(1)(A)(iii), notwithstanding that the indictment did not allege that their offense involved 50 grams or more of cocaine base[5] and that the trial court did not instruct the jury that to convict it had to find that the offense involved that threshold amount. 535 U.S. at 627–28. Like Johnson, the *Cotton* defendants did not object either at trial or sentencing; as in the instant case, *Apprendi* was not decided until *Cotton* was pending on appeal. *Id.* at 628. In the Supreme Court,

---

[5] Johnson's indictment did so allege. *See* Indictment at 1.

the defendants' challenge focused on the omission of the 50–gram allegation from the indictment. (In federal prosecutions, such a fact must be charged in the indictment, as well as submitted to the petit jury. *Apprendi*, 530 U.S. at 476, 490.) The Court held that plain error was the appropriate standard of review in light of the defendants' failure to object in the district court, and proceeded directly to the fourth prong of that standard. *Cotton*, 535 U.S. at 631–33.

Citing an earlier case in which a district court's error had been the failure to submit an element of an offense to a petit jury, the Supreme Court declared that where the evidence that an offense involves at least 50 grams of cocaine base is " 'overwhelming' " and " 'essentially uncontroverted,' " there is " 'no basis for concluding that [an] error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,' " as required by the fourth prong. *Id.* at 632–33 (quoting *Johnson*, 520 U.S. at 470). The Court then went on to conclude that there had been no plain error in *Cotton*, noting the overwhelming evidence of the quantity of drugs involved in the defendants' conspiracy, and concluding that "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Id.* at 633.

Presaging the analysis applied by the Supreme Court in *Cotton*, this court employed a similar approach in *Webb*. 255 F.3d at 900–02. Webb was charged with (inter alia) three counts of narcotics violations involving cocaine base, one for each of three drug distributions. The count involving the third transaction was the only one in which the quantity exceeded 50 grams, and was therefore the only one to charge a violation of § 841(b)(1)(A)(iii). *Id.* at 892. Following pre-*Apprendi* precedent, the district court told the jury (without objection) that it could convict on each count without finding that the defendant distributed any particular amount of cocaine. *See id.* at 893, 897. After the jury returned convictions on all counts, the court (again without objection) calculated the total quantity of cocaine base involved in all of the counts and imposed a guideline sentence appropriate for a violation of § 841(b)(1)(A)(iii). *See id.* at 893.

On appeal, Webb asserted, among other things, that his sentence violated *Apprendi*, which had been decided in the interim. 255 F.3d at 897. Employing the plain error test and proceeding directly to the fourth prong, we concluded that the evidence of drug quantity was both " 'overwhelming' " and " 'essentially uncontroverted.' " *Id.* at 900–01 (quoting *Johnson*, 520 U.S. at 470). We reasoned as follows:

> [The] counts involved three separate transactions: the government alleged that on each occasion, Webb sold a quantity of crack to the government's cooperating witness. For the jury to have convicted Webb of each of these three incidents, the jurors must have believed that Webb engaged in each of the three transactions and was responsible for the amounts he provided. The specific amount involved in each transaction was established by the testimony and report of a government chemist, and was confirmed by tape recordings of conversations between Webb and [a cooperating witness], in which the two discussed the quantities of crack involved in the transactions. Webb did nothing to challenge the evidence of drug quantity at either trial or sentencing, and even on appeal offers no scenario under which the jury could have convicted him of the transactions, yet rationally found that they involved different quantities than those testified to by the government chemist.

*Id.* at 901.

The analysis applied in *Cotton* and *Webb* is equally applicable here. Three officers testified that they saw Johnson throw objects onto a roof as he was being pursued by police. *See* Trial Tr. at 57 (June 18, 1998); *id.* at 95–96; Trial Tr. at 12 (June 19, 1998). The police recovered two bags of drugs from the rooftop where Johnson had tossed the objects, *see* Trial Tr. at 51 (June 17, 1998), and a government chemist testified that one of the bags contained 30.8 grams of cocaine base while the other contained 30.5 grams, *see* Trial Tr. at 45 (June 19, 1998). Johnson, testifying in his own defense, told the jury that the drugs did not belong to him. *Id.* at 111–12. He did not differentiate between the two bags, and did not

dispute the drug quantities specified by the chemist. He thus offered the jurors no scenario under which they could have convicted him of unlawful possession with intent to distribute cocaine base, yet found that the quantity involved was less than 50 grams.[6]

Johnson contends that he had no reason to contest drug quantity at trial because the trial took place before the Supreme Court issued the *Apprendi* decision. Webb made the same argument, and we responded in this way:

> [E]ven accepting Webb's contention that he had no reason to contest quantity at trial, he had every incentive to contest it at sentencing. The presentence report's recommendations concerning the quantity of drugs involved in Webb's transactions, and the district court's adoption of those recommendations, dramatically affected Webb's sentencing range. Yet, . . . he did not dispute the accuracy of the drug quantities there reported. Moreover, whatever his incentives below, Webb surely has an incentive on appeal to suggest a scenario under which he could plausibly have disputed the drug quantities specified by the chemist. Even now, however, he suggests none.

255 F.3d at 901–02 (citations omitted). In virtually every respect, Johnson's situation is the same as Webb's, except that Johnson had an additional opportunity at his resentencing to object to the quantity calculation and to pose a plausible scenario under which the jury could have found him guilty yet responsible for less than the entire quantity of drugs. He did not do so.[7]

---

[6] We further note that the verdict form given to the jury required it to state its verdict on a "charge of unlawful possession with intent to distribute *50 or more grams* of cocaine base, also known as crack." Appellee's Supp. App. at A1 (emphasis added). The jury marked the box designated "guilty." *Id.*

[7] When confronted with this deficiency at oral argument, defense counsel suggested that the jury might have found that only one of the two bags of cocaine base found on the roof belonged to Johnson—who, under this scenario, would have had the bad luck of throwing his bag of crack onto a roof that already happened to

Accordingly, we conclude that Johnson's conviction for possessing with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), survives plain error review of Johnson's claim of *Apprendi* error based on drug quantity.

C

We reach the same conclusion regarding Johnson's claim that the trial judge violated *Apprendi* by failing to instruct the jury regarding the "type" of drug that he was charged with possessing. Johnson contends that the "cocaine base" specified in § 841(b)(1)(A)(iii) refers only to the "crack" form of cocaine base;[8] that he was therefore entitled to an instruction that the jury could not convict unless it found, beyond a reasonable doubt, that the drug contained in the bags was crack; and that, because the court gave no such instruction, it could only convict and sentence him under § 841(b)(1)(C). Without addressing the validity of any of these claims, upon none of which this circuit has ever ruled, we again conclude that there was no plain error in this case.

At Johnson's trial, the government's chemist equated cocaine base with crack. Trial Tr. at 44 (June 19, 1998). A narcotics expert testified that the weight of the drugs in each of the bags (approximately 31 grams) is a weight at which "crack cocaine" is commonly sold on the street. *Id.* at 71–72. In addition, he gave a description of what "crack" looks like,

---

contain another, virtually identical bag of crack. We find this scenario implausible. In any event, because *Webb* made clear that a defendant must present a plausible scenario to satisfy his burden of showing plain error, the proffer of such a scenario at oral argument comes too late in the proceedings to affect our disposition. *See United States v. Thompson*, 27 F.3d 671, 677 n.1 (D.C. Cir. 1994).

[8] For support, Johnson relies on a provision of the Sentencing Guidelines. *See* U.S.S.G. § 2D1.1(c), note D (" 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.").

*id.* at 59–61, which matched the arresting officer's description of the drugs he recovered from the roof, Trial Tr. at 61–62 (June 17, 1998); Trial Tr. at 40 (June 18, 1998). That officer also testified that both bags of drugs contained "crack cocaine." Trial Tr. at 51 (June 17, 1998). Johnson neither objected to this testimony nor contended that the substance was other than crack cocaine. And again, despite the fact that, if his argument were correct, the difference would have been important for sentencing purposes even prior to *Apprendi*, *see supra* note 8, Johnson never claimed at either sentencing or resentencing that the drugs were a form of cocaine base other than crack. Nor did he do so on this appeal.

Accordingly, we again find no plain error, and therefore affirm Johnson's conviction for violating 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) by possessing with intent to distribute 50 or more grams of cocaine base. Moreover, as we held in *Webb*, because the conviction survives, so, too, does the sentence that is concededly appropriate for that offense. 255 F.3d at 900, 902.

### III

In addition to his *Apprendi* challenge, Johnson argues that the district court erred in failing to depart downward from the otherwise applicable guideline sentence on three grounds.[9] At oral argument, Johnson's counsel conceded that two of those departure claims depend upon the success of Johnson's *Apprendi* challenge. Having rejected that challenge, we agree that those two departure claims are now moot.

The first of those is Johnson's claim that he is entitled to what he calls a "tail-wagging-dog" departure. Johnson ar-

---

[9] Although the Statement of Facts section of Johnson's opening brief mentioned many other departure claims that Johnson had raised at his resentencing, the defendant's briefs contain arguments concerning only the three departures discussed in this Part. At oral argument, Johnson's counsel clarified that only those three are at issue on appeal.

gues that, because post-*Apprendi* it is the jury rather than the court that determines whether an offense involves at least 50 grams or more of crack, it is now atypical for a court's determination of drug quantity (the "tail") to increase a defendant's sentence significantly above that required by the jury's verdict (the "dog"). Whatever the validity of defendant's argument, it has no application here. Because we have affirmed Johnson's conviction under § 841(b)(1)(A)(iii), he is subject by statute to a 120–month mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A)(iii). The one additional month imposed by the sentencing court puts very little tail on that particular dog.

Johnson's second now-mooted claim is based on U.S.S.G. § 5K2.20, which permits a departure below the applicable guideline range when the defendant's criminal conduct constitutes "aberrant behavior." Johnson argues that his involvement in the drug crime for which he was convicted was "aberrant" in light of his relatively clean record and good behavior while in prison. But § 5K2.20 is inapplicable on its face to a defendant like Johnson, who has been convicted of an offense that carries a mandatory minimum sentence. *See* U.S.S.G. § 5K2.20 (providing that a "court may not depart below the guideline range on this basis if . . . the instant offense of conviction is a serious drug trafficking offense"); *id.* § 5K2.20, cmt. n.1 (defining "serious drug trafficking offense" as any controlled substance offense that "results in the imposition of a mandatory minimum term of imprisonment").

Johnson's sole remaining claim is for a departure based on a theory he calls "residual doubt." Such a departure should be granted, Johnson contends, because there remains residual doubt as to whether the prosecutor's closing argument, which this court found improper in *Johnson I*, affected the verdict. Johnson concedes that no court has ever granted a departure on this theory, and further concedes that he failed to raise it at his original sentencing. He maintains, however, that *Johnson I* made the claim "newly relevant," and therefore subject to de novo review upon resentencing under the *Whren* stan-

dard, by holding that the prosecutor's remarks constituted error.

We need expend no time discussing either Johnson's theory or the appropriate standard of review, as it is plain that he has simply misunderstood the panel's decision in *Johnson I*. In holding that the prosecutor's improper comments were harmless error, the court necessarily concluded that they did not have "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Indeed, the court went further, stating that it did not think it "plausible, in light of the formidable evidence arrayed against Johnson, that the prosecutor's remarks are what account[ed] for Johnson's relatively speedy conviction." 231 F.3d at 48. There is nothing in these statements to suggest that the *Johnson I* panel had any "residual doubt," either about the impact of the prosecutor's remarks on the jury verdict or about Johnson's guilt. And our references in Part II to the overwhelming nature of the evidence against the defendant should make clear where this panel stands as well.

## IV

For the foregoing reasons, the defendant's conviction and sentence are

*Affirmed.*