Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 8, 2003        Decided October 21, 2003

No. 02-3033

UNITED STATES OF AMERICA,
APPELLEE

v.

CRAIG PETTIGREW,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 96cr00336–01)

———

*Robert S. Becker* argued the cause for appellant.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher*, *Thomas J. Tourish, Jr.*, and *Mary Ann Snow*, Assistant U.S. Attorneys.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Appellant Craig Pettigrew contends that his 1997 drug convictions and sentence are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because a judge rather than a jury determined the quantity of drugs involved in his crimes. Pettigrew, however, failed to raise this claim at trial or on direct appeal. As a consequence, we may not consider Pettigrew's challenge on collateral review unless he shows "cause and prejudice" sufficient to overcome his procedural default. We conclude that the appellant has failed to satisfy his burden of demonstrating that he suffered prejudice from the alleged *Apprendi* error, and we therefore affirm the district court's denial of his motion for collateral relief.

I

On September 26, 1996, a grand jury returned a four-count indictment against Pettigrew that grew out of an undercover investigation of his drug trafficking activities. Counts 1 and 2 charged him with distributing cocaine base (crack cocaine) on March 7, 1996: Count 1 charged a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) for distributing 50 grams or more of the drug; Count 2 charged a violation of 21 U.S.C. § 860(a) for distributing 50 grams or more of cocaine base within 1000 feet of a school. Counts 3 and 4 of the indictment charged Pettigrew with violations of the same two statutes for distributing cocaine base in a second transaction on March 22, 1996.

Pettigrew's case went to trial on January 22, 1997. An undercover police officer and a government informant testified regarding the defendant's participation in the two drug transactions. Their testimony was supported by audiotape and, in the case of the second transaction, videotape recordings. The officer testified that Pettigrew had agreed to provide two ounces of crack cocaine for $2000 on each occasion. A government chemist, in turn, testified that the crack cocaine Pettigrew actually provided in the first transaction weighed 50.62 grams, and that the amount he provided in the

second weighed 50.57 grams. Pettigrew testified in his own defense, conceding that he had engaged in the drug deals, but insisting that he had been entrapped into so doing.

Consistent with then-prevailing precedent in this circuit, the trial court did not instruct the jury that, to convict, it must find the 50–gram drug quantity recited in the indictment for each count; instead, the court told the jury, without objection from the defendant, that "[t]he Government need not prove that the defendant distributed any particular numerical amount of cocaine base or crack but it must prove beyond a reasonable doubt that the defendant distributed a detectable or measurable amount of cocaine base or crack." 1/27/97 Tr. at 100. On January 28, 1997, the jury convicted Pettigrew on Counts 1, 3, and 4, but acquitted him on Count 2. The trial court later vacated Count 3 as a lesser included offense of Count 4. It subsequently entered a judgment of conviction on Count 1 for the distribution of 50 grams or more of cocaine base on March 7, in violation of § 841(a)(1) and (b)(1)(A)(iii), and on Count 4 for the distribution of cocaine base within 1000 feet of a school on March 22, in violation of § 860(a).

The district court conducted a sentencing hearing on July 3, 1997. The Presentence Investigation Report (PSR), prepared by the U.S. Probation Office, recited the quantities of crack cocaine as reported by the government chemist. The report stated that, as a consequence of his convictions for violating both § 841(b)(1)(A) and § 860(a), Pettigrew was subject to a statutory mandatory minimum sentence of imprisonment for 10 years followed by supervised release for an additional 10 years. PSR ¶ ¶ 43, 45; *see infra* Part II. The Probation Office calculated Pettigrew's sentencing range under the United States Sentencing Guidelines as 151 to 188 months' imprisonment.[1]

---

[1] The Probation Office calculated Pettigrew's guidelines offense level as 34: a base offense level of 2 under § 2D1.2 (the guideline applicable to 21 U.S.C. § 860(a)) for committing an offense near a protected location, plus an offense level of 32 under § 2D1.1(c)(4) (the drug quantity table) for distributing 50 to 150 grams of cocaine

The district court adopted the presentence report's factual findings and guidelines calculations. Judgment at 4. But the court announced that it would depart downward from the guidelines range, based on what it perceived to be an unjustified disparity in the guidelines sentences for offenses involving crack as compared to powder cocaine. 5/2/97 Tr. at 11–21.[2] The court then sentenced Pettigrew to the statutory mandatory minimum of 120 months' imprisonment and 10 years' supervised release. Pettigrew filed a direct appeal, and, on September 24, 1999, we affirmed the judgment of the district court. *United States v. Pettigrew*, 203 F.3d 53 (D.C. Cir. 1999). The defendant did not petition the Supreme Court for a writ of certiorari.

On November 8, 2000, Pettigrew filed a motion pursuant to 28 U.S.C. § 2255, asking the district court to vacate, set aside, or correct his sentence.[3] He asserted that his convictions and sentence were unlawful in light of *Apprendi v. New Jersey*, which the Supreme Court had issued in June of that year. 530 U.S. 466 (2000). The district court denied Pettigrew's motion, holding that no violation of *Apprendi* had occurred in the case, but issued a certificate of appealability pursuant to 28 U.S.C. § 2253.

---

base. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.2 (1995) (U.S.S.G.); *id.* § 2D1.1(c)(4); *see also id.* § 3D1.2(d) (explaining that counts should be grouped and their respective quantities aggregated when the offense level is determined largely according to drug quantity). The offense level of 34, combined with Pettigrew's criminal history category of I, generated a sentencing range of 151 to 188 months. *See* PSR ¶¶ 13, 25, 44; U.S.S.G. ch.5, pt. A.

[2] This court has held, and had held at the time of Pettigrew's sentencing, that "the crack/powder disparity" is not "a valid basis for downward departure." *In re Sealed Case*, 292 F.3d 913, 915 (D.C. Cir. 2002) (citing *United States v. Anderson*, 82 F.3d 436, 440–42 (D.C. Cir. 1996)). The government, however, did not appeal from the district court's decision. *See* Appellees' Br. at 2 n.1.

[3] Pettigrew timely filed his § 2255 motion within one year of the date upon which the judgment of conviction became final. *See Clay v. United States*, 537 U.S. 522, 123 S. Ct. 1072, 1076 (2003); *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002).

## II

We begin with a description of Pettigrew's claim of error, and of the standard of review that we must apply to that claim.

Section 841(b)(1) of Title 21 of the United States Code provides three escalating penalty ranges for the distribution of cocaine base: § 841(b)(1)(C) authorizes a maximum sentence of 20 years' imprisonment (with no mandatory minimum), followed by at least 3 years of supervised release, for distributing any detectable amount of the drug; § 841(b)(1)(B) provides a mandatory minimum sentence of 5 years' and a maximum sentence of 40 years' imprisonment, followed by at least 4 years of supervised release, for distributing 5 grams or more; and § 841(b)(1)(A) — the section under which Pettigrew was convicted for the March 7 transaction — provides a mandatory minimum sentence of 10 years' and a maximum sentence of life imprisonment, followed by at least 5 years of supervised release, for distributing 50 grams or more. *See United States v. Webb*, 255 F.3d 890, 894 (D.C. Cir. 2001). A violation of § 860(a), under which Pettigrew was convicted for the March 22 transaction, subjects a defendant to double the maximum prison term and minimum supervised release term authorized by the applicable subsection of § 841(b) — here, § 841(b)(1)(A) — resulting in a supervised release term for Pettigrew of at least 10 years.[4]

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. After *Apprendi*, this circuit held that a conviction under § 841(b)(1)(A) "is not proper unless the relevant drug threshold has been stated in the indictment, submitted to the jury, and proven beyond a reasonable doubt." *Webb*, 255 F.3d at 900 (citing *United States v. Fields*, 251 F.3d 1041, 1043 (D.C. Cir. 2001)). Based on these

---

[4] Section 860(a) also imposes a minimum prison term of 1 year, "[e]xcept to the extent a greater minimum sentence is otherwise provided by section 841(b) of this title." 21 U.S.C. § 860(a).

developments, which postdate his direct appeal, Pettigrew argues that his conviction for violating § 841(b)(1)(A) was unlawful, because the fact that his offense involved 50 grams or more of cocaine base was decided by a judge rather than a jury. Pettigrew further argues that his sentence was also unlawful, because it was only the improper conviction under § 841(b)(1)(A) that compelled the district court to impose the 10–year mandatory minimum periods of incarceration and supervised release[5] — a sentence the court indicated it would not have imposed had it been permitted to depart below the statutory minimum term. Pettigrew thus asks us to vacate his § 841(b)(1)(A) conviction, and to remand the case for entry of a conviction and attendant resentencing under § 841(b)(1)(C) — the only provision of § 841(b)(1) that does not contain a threshold drug quantity.[6]

The government responds that there was no *Apprendi* error at all in Pettigrew's case. It avers that even if the drug quantity found by a judge increases a defendant's mandatory minimum sentence, *Apprendi* does not apply as long as the sentence imposed does not exceed the maximum sentence provided by § 841(b)(1)(C). *See* Appellee's Br. at 22–24 (citing *Harris v. United States*, 536 U.S. 545 (2002)).[7] But

---

[5] As noted above, the 10-year supervised release term was the product of Pettigrew's convictions under both § 841(b)(1)(A) and § 860(a).

[6] Although Pettigrew's proposed disposition does not expressly refer to his conviction on Count 4 for violating § 860(a), presumably he believes that the concurrent sentence he received on that count must be corrected as well — since it was based on the district court's determination that the March 22 transaction also involved 50 grams or more of crack cocaine. *See* 21 U.S.C. § 860(a) (subjecting violators to "twice the maximum punishment" and "at least twice any term of supervised release" authorized by the relevant portion of 21 U.S.C § 841(b)).

[7] Pettigrew replies that *Harris* is inapposite because that case involved a statute under which a fact (brandishing a firearm) increased only the minimum and not the maximum sentence, while in his case the determination that Pettigrew's crime involved 50 grams of crack increased both. Although he concedes that facts

the government also maintains that, for two reasons, we should not reach the merits of Pettigrew's *Apprendi* claim at all. First, it argues that *Apprendi* does not apply to cases, like Pettigrew's, that became final before *Apprendi* was announced, because *Apprendi* does not meet the requirements for retroactive application set forth in *Teague v. Lane*, 489 U.S. 288 (1989).[8] Second, the government argues that, even if *Apprendi* were retroactively applied, Pettigrew's failure to challenge the omission of a quantity instruction at trial or on direct review constitutes a procedural default that he cannot overcome.

We need not decide the retroactivity question because the government's second point is sufficient to resolve this case.[9] "Where a defendant has procedurally defaulted a claim by

_____

that trigger incremental changes in mandatory minimums may be found by the judge, he contends that facts that change both minimum and maximum terms function as offense elements and must be submitted to the jury. Appellant's Br. at 10–12.

[8] Under *Teague*, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," unless the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or constitutes a "watershed rule[ ] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. *Id.* at 310–11 (citations, internal quotation marks, and alterations omitted).

[9] *See United States v. Dale*, 140 F.3d 1054, 1056 (D.C. Cir. 1998) (declining to reach the question of retroactive application because the appellant could not meet his burden under the "prejudice" prong of the "cause and prejudice" test for procedural default); *United States v. Smith*, 241 F.3d 546, 549 (7th Cir. 2001) (same where the appellant established neither cause nor prejudice). Although a court "must apply *Teague* before considering the merits of the claim" when the government challenges the retroactive application of a decision, *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994), a disposition based on the appellant's procedural default does not require us to decide the merits of the underlying *Apprendi* claim. *See United States v. Lafayette*, 337 F.3d 1043, 1048 n.7 (D.C. Cir. 2003).

failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *see United States v. Frady*, 456 U.S. 152, 167–68 (1982) (applying the same standard to a challenge brought under 28 U.S.C. § 2255). As Pettigrew has not professed actual innocence,[10] "he must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167–68.

To establish "actual prejudice," Pettigrew "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Although the required showing has not been precisely delineated,[11] it is clear that Pettigrew must *at least* demonstrate that "there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different." *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).[12] Indeed, the "showing of prejudice" required to overcome procedural default on collateral review "is signifi-

---

[10] *See Bousley*, 523 U.S. at 623 ("It is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency.").

[11] *See* RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 26.3c, at 1219–25 (4th ed. 1998).

[12] In *Dale*, we added that "[c]ircuit precedent suggests that habeas prejudice may require a greater showing, namely, *'by a preponderance of the evidence*, that the outcome of his trial would have been different but for the errors in question.'" 140 F.3d at 1056 n.3 (quoting *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994)) (emphasis in *Dale*); *cf. Frady*, 456 U.S. at 174 (rejecting as insufficient to support a collateral attack a claim of prejudice resulting from erroneous jury instructions, where there was "no substantial likelihood the erroneous . . . instructions prejudiced [the defendant's] chances with the jury").

cantly greater than that necessary" to establish plain error on direct review. *Murray v. Carrier*, 477 U.S. 478, 493–94 (1986); *see also Frady*, 456 U.S. at 166; *Dale*, 140 F.3d at 1057; *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994). To establish the latter, the defendant "bears the burden of persuasion" in showing "that the error ... affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).[13] We must require at least as much from Pettigrew.

In the following Part, we assume for purposes of analysis that there was *Apprendi* error in Pettigrew's case, and ask whether that error resulted in actual prejudice under the standard just described. Because we conclude that Pettigrew has not demonstrated that he suffered such prejudice, we find it unnecessary to determine whether he has demonstrated the kind of "cause" also required to excuse his procedural default. *See Frady*, 456 U.S. at 168; *Dale*, 140 F.3d at 1056 n.4.

Before proceeding to the prejudice inquiry, we pause to consider Pettigrew's threshold objection to the entire enterprise of asking whether his procedural default may be overcome by a showing of cause and prejudice. In Pettigrew's view, because the jury did not find that he distributed 50 grams of crack cocaine before convicting him, the district court "lacked jurisdiction" to sentence him under § 841(b)(1)(A). Appellant's Br. at 32. Pettigrew asserts that such a "jurisdictional defect" cannot be "waived" by a procedural default, and that he therefore cannot be required to

---

[13] This formulation derives from the third prong of the plain error standard, which requires that the error "affec[t] substantial rights." *Olano*, 507 U.S. at 734 (quoting FED. R. CRIM. P. 52(b)). The fourth prong of that standard requires that the error also "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736; *see Johnson v. United States*, 520 U.S. 461, 466–67 (1997). Although the Supreme Court has not been explicit on the point, its admonition that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal under the plain error standard," *Frady*, 456 U.S. at 166, indicates that a prisoner must, at a minimum, satisfy all of the requirements of the plain error standard in order to succeed in a collateral attack.

show cause and prejudice — or even plain error — before the court may address the merits of his claim.

This argument is readily dispatched in light of *United States v. Cotton*, in which the Supreme Court held: the omission of drug quantity from an indictment, in claimed violation of *Apprendi*, does not deprive a trial court of jurisdiction; such a claim can be forfeited by a defendant's failure to raise it in the trial court; and such a forfeited claim may only be corrected on direct review if it meets the plain error standard. 535 U.S. 625, 629 (2002). As the Court explained, "a district court 'has jurisdiction of all crimes cognizable under the authority of the United States,'" and the "'objection that the indictment does not charge a crime against the United States goes only to the merits of the case.'" *Id.* at 630 (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)). If defects in an indictment do not deprive a court of power to adjudicate a case, we see no reason why defects in jury instructions — the error that Pettigrew alleges here — would yield a different result.[14] Indeed, in *Cotton*, the Court noted that it had previously applied the plain error standard on direct review when a defendant had failed to object to jury instructions in which the materiality element of a "false statements" charge was omitted: "The important role of the petit jury did not," the Court observed, "prevent us . . . from applying the longstanding rule 'that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right.'" *Id.* at 634 (referring to *Johnson v. United States*, 520 U.S. 461 (1997), and quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)).

In short, the omission of drug quantity from jury instructions is not a jurisdictional error. Rather, when a defendant

---

[14] In *Cotton* itself, drug quantity was omitted from the jury instructions as well as from the indictment, although the Court did not discuss the relevance of the former omission. *See Cotton*, 535 U.S. at 628. In Pettigrew's case, although the issue of drug quantity was omitted from the jury instructions, each count of the indictment alleged the distribution of 50 grams or more of cocaine base.

fails to make a timely objection to such an omission, a court must apply the standard of review appropriate to the stage of the proceedings at which it is eventually raised: plain error on direct review, or cause and prejudice on collateral attack.[15] In this case, because the appropriate standard is cause and prejudice, we now proceed to consider how Pettigrew's claim fares under the "prejudice" prong of that standard.

## III

The evidence of drug quantity at Pettigrew's trial was twofold. First, the undercover officer testified that Pettigrew had promised on each occasion to provide "two ounces" of crack cocaine, 1/23/97 Tr. at 21, 50, an amount that corresponds to 56.70 grams. Second, the government chemist testified that he analyzed and weighed the crack that Pettigrew actually provided, and found that Pettigrew sold the undercover officer 50.62 grams in the first transaction and 50.57 grams in the second. Although defense counsel had a full opportunity to cross-examine the witnesses, and did in fact cross-examine the chemist about his weighing technique, counsel did not question the quantities that the chemist reported.

With quantity uncontested at trial, there is no reason to expect that the trial's outcome would have been different had the issue been specifically put to the jury. As we said in *United States v. Dale*, a case in which the defendant attacked his conviction on the ground that the judge rather than the jury had determined the "materiality" element of the offense

---

[15] *See Dale*, 140 F.3d at 1057 (holding that the "cause and prejudice" standard applies on collateral review when an element of an offense has been decided by a court rather than a jury, and rejecting the contention that the failure to submit an element to the jury is necessarily prejudicial merely "because it requires speculation about what a hypothetical jury could have decided, had it been allowed to do so") (citation omitted); *cf. Neder v. United States*, 527 U.S. 1, 8–9 (1999) (holding that the omission of an element is not a "structural" error subject to automatic reversal, but rather — where objected to — is subject to harmless error analysis).

of making false statements: "In the absence of any basis for finding that [the defendant's] misrepresentations were not material, we cannot say that the judge's failure to submit materiality to the jury worked to [the defendant's] actual and substantial disadvantage." *Dale*, 140 F.3d at 1056 (internal quotation marks omitted).

Pettigrew raises two objections to this conclusion. First, he contends that, because the weight of the crack cocaine in each transaction was just slightly above the 50–gram threshold, the evidence of quantity was not "overwhelming," and the jury might therefore have reached a different conclusion than did the judge. But whether or not the evidence of quantity may be characterized as "overwhelming," there is no question that it was uncontested.[16] And in the absence of any evidence to the contrary, the jury would have had no basis for concluding that Pettigrew distributed less than 50 grams in each of his criminal transactions. This was not a case, for example, in which the government recovered a quantity of drugs less than the 50–gram statutory threshold, and thus had to rely on "vague testimonial" rather than physical evidence to prove that the threshold was met. *Fields*, 251 F.3d at 1045. Instead, Pettigrew's claim relies on nothing more than speculation that the jury might have decided differently than the judge did. Such naked speculation is simply insufficient to establish prejudice.[17]

---

[16] *Cf. Neder*, 527 U.S. at 19 (stating that the omission of an element from a jury instruction would not be deemed harmless on direct review if "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding"); *Brecht v. Abrahamson*, 507 U.S. 619, 637–39 (1993) (holding, on habeas review, that a constitutional trial error "did not 'substantial[ly] . . . influence' the jury's verdict," and hence was harmless, where "the State's evidence of guilt was, if not overwhelming, certainly weighty") (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)).

[17] *See Frady*, 456 U.S. at 172 (holding in a murder case that "the strong uncontradicted evidence of malice in the record, coupled with [the defendant's] utter failure to come forward with a colorable claim that he acted without malice, disposes of his contention that

Second, Pettigrew objects that, although he did fail to contest drug quantity at trial, he had no incentive to dispute it at all since courts did not think that drug quantity was a question for the jury before *Apprendi*. We have rejected similar arguments in the past because regardless of the incentive that defendants had to challenge drug quantity at pre-*Apprendi* trials, they still had "every incentive to contest it at sentencing." *Webb*, 255 F.3d at 901–02; *see United States v. Johnson*, 331 F.3d 962, 969 (D.C. Cir. 2003). In this case, for example, the difference between more and less than 50 grams per transaction was the difference between a guidelines sentence constrained by a mandatory minimum of 10 years' incarceration and 10 years' supervised release, and a guidelines sentence constrained only by a mandatory minimum of 5 years' incarceration and 8 years' supervised release. *See* 21 U.S.C. §§ 841(b)(1)(B)(iii), 860(a). And, as Pettigrew correctly notes, the district judge made it quite clear that, but for § 841(b)(1)(A)'s mandatory minimum, he would have departed even further from the guidelines and imposed an even shorter sentence than he did. Appellant's Br. at 6, 18, 23; *see* 5/2/97 Tr. at 12–21.[18] Hence, had Pettigrew thought

he suffered ... actual prejudice" from an instructional error that relieved the government of the burden of proving that element); *Dale*, 140 F.3d at 1054 (finding no prejudice where the defendant "suggested no facts or theory to rebut the district judge's legal conclusion that the charged nondisclosures were material"); *cf. Neder*, 527 U.S. at 19 (finding that the omission of an element from jury instructions was harmless "where [the] defendant did not, and apparently could not, bring forth facts contesting the omitted element"); *United States v. Johnson*, 331 F.3d 962, 969 (D.C. Cir. 2003) (finding an *Apprendi* error not plain where the defendant "offered the jurors no scenario under which they could have convicted him of unlawful possession with intent to distribute cocaine base, yet found that the quantity involved was less than 50 grams").

[18] As noted above, the only ground for departure adopted by the district court was an improper one. *See supra* note 2. This suggests a second reason why the defendant suffered no prejudice from the alleged *Apprendi* error, at least with respect to his term of incarceration. Even if we were to do what Pettigrew asks of us —

there was any basis for challenging the chemist's determination of drug quantity, he would have had every incentive to object to the incorporation of that determination in the presentence report upon which the sentencing judge relied. Instead, he advised the Probation Office that the report contained "no factual/material inaccuracies." PSR at 11. Indeed, even on this appeal, where the incentive for demonstrating prejudice could not be greater, Pettigrew has suggested no grounds upon which he could contest the chemist's testimony or otherwise challenge the evidence of drug quantity. *Cf. Webb*, 255 F.3d at 902 (concluding that an *Apprendi* error was not plain where the defendant offered no "scenario under which he could plausibly have disputed the drug quantities specified by the chemist").

In sum, because Pettigrew has failed to demonstrate that the omission of drug quantity from his jury instructions affected the outcome of his district court proceedings, he has failed to establish prejudice sufficient to overcome his procedural default. As a consequence, this court cannot overturn his convictions for violating 21 U.S.C. § 841(b)(1)(A) and § 860(a). And because those convictions stand, the sentence that Pettigrew received — which he concedes was appropriate for the violation of those statutes — stands as well. *See*

---

vacate his conviction under § 841(b)(1)(A) and remand for entry of a conviction and resentencing under § 841(b)(1)(C) — he would still receive *at least* the same prison term he received before. Although a minimum 10–year term would no longer be dictated by the statute, the Sentencing Guidelines would still dictate an even longer term in light of the court's finding that Pettigrew's offenses involved a total of 101.19 grams of cocaine base. *See* U.S.S.G. §§ 2D1.1(c)(4), 2D1.2 (prescribing a sentence of 151 to 188 months where the relevant offense conduct involves a total of 50 to 150 grams of cocaine base). And because no lawful ground for a departure from the guidelines has been suggested, the court would be required to impose a term within the guidelines range. *See Lafayette*, 337 F.3d. at 1051 n.14; *see also Webb*, 255 F.3d at 898 (holding that a court does not violate *Apprendi* if it makes a quantity determination and sentences a defendant, convicted of violating § 841(b)(1)(C), to a guidelines sentence below § 841(b)(1)(C)'s statutory maximum of 20 years).

*Johnson*, 331 F.3d at 970 (holding that where a conviction survives an *Apprendi* challenge under plain error review, a sentence appropriate for that conviction also survives); *Webb*, 255 F.3d at 900, 902 (same).[19]

## IV

For the foregoing reasons, we affirm the district court's judgment denying Pettigrew's motion under 28 U.S.C. § 2255.

*Affirmed.*

---

[19] For this reason, we have no need to address Pettigrew's contention that, although his 10–year supervised release term is appropriate for a conviction under §§ 860(a) and 841(b)(1)(A), it is not appropriate for a conviction under §§ 860(a) and 841(b)(1)(C). See *Johnson*, 331 F.3d at 967 n.4; *Webb*, 255 F.3d at 902 n.16.